**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **IOENGINE, LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **-v-** | § | **6:21-CV-01296-ADA** |
| | § | |
| **ROKU, INC.,** | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF

Before the Court are the Parties' claim construction briefs: Defendant's Opening and Reply briefs (ECF Nos. 51 and 70 respectively) and Plaintiff's Response and Sur-Reply briefs (ECF Nos. 55 and 72, respectively). The Court provided preliminary constructions for the disputed terms the day before the hearing. The Court held the *Markman* hearing on October 13, 2022. ECF No.80. During that hearing, the Court informed the Parties of the final constructions for the disputed terms. *Id.* This Order does not alter any of those constructions.

## I.     DESCRIPTION OF THE ASSERTED PATENTS

Plaintiff asserts U.S. Patent Nos. 10,448,819 and 10,972,584. Both patents are directed to secure access to portable devices. The '584 Patent is a continuation of the '819 Patent. The two patents appear to have identical specifications.

The Asserted Patents describe that, prior to the Asserted Patents, "no [portable computing system] to securely access, execute, and process data is available in an extremely compact form." '819 Patent at 2:33–36. The specifications describe that "no solution exists that allows users to employ traditional large user interfaces they are already comfortable with, provides greater

portability, provides greater memory footprints, draws less power, and provides security for data

on the device." *Id.* at 2:43:48.

The Asserted Patents claim an apparatus, system, and method relating to a portable device,

which the specification also refers to as a "tunneling client access point" ("TCAP"). '819 Patent

at Abstract. The Asserted Patents describes that the:

> TCAP [is] very easy to use; at most it requires the user to simply plug the device
> into any existing and available desktop or laptop computer, through which, the
> TCAP can make use of a traditional user interface and input/output (I/O)
> peripherals, while the TCAP itself, otherwise, provides storage, execution, and/or
> processing resources. Thus, the TCAP requires no power source to maintain its data
> and allows for a highly portable "thumb" footprint. Also, by providing the
> equivalent of a plug-n-play virtual private network (VPN), the TCAP provides
> certain kinds of accessing of remote data in an easy and secure manner that was
> unavailable in the prior art.

*Id.* at 2:43–60.

Figure 1 depicts an exemplary embodiment of the claimed TCAP. *Id.*



Figure 1 depicts that User 133a plugs TCAP 130 into one of a variety of access terminals 127. *Id.*

at 3:54–56. Figure 1 also depicts that the combination of the portable drive and terminal

communicates through communication networks 113a and 113b to servers 110, 115, and 125 which may provide additional processing resources and/or storage capacity.  *Id.* at 4:8–15.

The specification describes that the portable drive (*i.e.*, TCAP 130) may use the terminal's capabilities to varying degrees, depending on its own capabilities.  For example, the specification describes that the portable drive may use the access terminal simply as a computer monitor.  *Id.* at 10:49–52.  As a second example, the portable drive may use the access terminal's "input peripherals as user input devices that control actions on the TCAP."  *Id.* at 4:57–58.  Alternatively, the portable drive "may optionally interconnect wirelessly with a peripheral device 912 and/or a control device 911," where the specification describes control devices as including "card readers, dongles, finger print readers, gloves, graphic tablets, joysticks, keyboards, mouse (mice), trackballs, trackpads, retina readers, and/or the like."  *Id.* at 24:46–48, 15:52–55.  As a third example, the specification also discloses that the portable device may have "a wireless component" such as a "Bluetooth" or "an IEEE 802.11b" chip, which may provide networking functionality. *Id.* at 24:32–35; 15:56–64.

## II.    LEGAL STANDARD

### A.  General principles

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted).  The plain-and-ordinary

meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve

the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

## B.  Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about

5

the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite.  *Id.* at 901.  Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed.  *Id.* at 911.

## III.   LEGAL ANALYSIS

### A.   Term #1: "terminal"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| #1: "terminal"<br><br>U.S. Patent No. 10,447,819, Claim 1; U.S. Patent No. 10,972,584, Claim 1<br><br>Proposed by Defendant | The term should be construed to have its plain and ordinary meaning: "computing device" | "a computing device to control actions on the portable device"[1] |

**The Parties' Positions:**

Defendant contends that its proposed construction is taken from the specification.  Opening at 8 (quoting '819 Patent at 3:56–63, 4:57-58).  Defendant contends that a plain-and-ordinary meaning construction is wrong because it incorrectly focuses on "'terminal' in isolation and fails to account for the particular function and purpose of the 'terminal' in the alleged invention" and because it fails to provide any guidance to a jury as to what the term means in connection with the asserted patents.  *Id.* at 8–9.

---

[1] During the *Markman* hearing, Defendant proposed an alternative construction—"a computing device through which the user engages the portable device"—which Defendant contends is based on '819 Patent at 3:56–63.  While the wording more closely tracks the disclosure in that passage, because the substance of the two constructions appears to be identical, the Court bases its analysis on Defendant's original construction as the parties provided complete briefing for that construction.

Defendant contends that the specification uses "terminal" and "access terminal" or "AT" interchangeably and that a POSITA would understand that they are the same. *Id.* at 9. Defendant contends that the claims describe that a "terminal" includes components such as an "output component configured to present an interactive user interface" ('819 Patent, Cl. 184) or "a processor, output component, and a memory configured to store program code" ('584 Patent, Cl. 1). *Id.*

Defendants contend that the intrinsic evidence is "clear" that the terminal must "control actions on the portable device through the user's input." *Id.* at 9–10 ('819 Patent at Abstract, 3:56–63, 4:52–56, 4:57–58) (emphasis removed). Defendants contend that the specification describe that if the terminal is connected to a network, then the terminal provides the portable device with network connectivity. *Id.* at 10. Defendant contends that because "this arrangement of devices—a portable device, connected to and being controlled by an access terminal, with the access terminal optionally being connected to a communications network—is described consistently throughout the Asserted Patents as the alleged invention" that ignoring the terminal's role in this arrangement would "would vitiate the alleged invention in the Asserted Patents." *Id.* at 10–11.

Defendant contends that given the specification's distinction between "terminal" and "peripheral device," a "terminal[] cannot be broadly interpreted to include any device that may connect to the portable device." *Id.* at 11. Defendant contend that the specification describes that peripheral devices "may be audio devices, cameras, dongles …, external processors …, goggles, microphones, monitors, network interfaces, printers, scanners, storage devices, video devices, visors, and/or the like," and that peripheral devices do not control the actions on the portable device. *Id.* at 11 (quoting '819 Patent at 15:56–64.). Therefore, based on those assertions, Defendant contends that "the terminal/access terminal is a computing device that controls actions

on the portable device and is not just any device that can connect to, or communicate with, the portable device." *Id.*

Defendant contends that Applicant "distinguished the prior art on the basis that user-control commands in its alleged invention are received through the claimed terminal, as opposed to being received through the portable device.' *Id.* at 12 (internal quotations omitted).

In its response, Plaintiff agrees with Defendant that terminal is a computing device. Response at 5–6 (citing 3:56–59). But Plaintiff disagrees the construction of terminal should include "control actions on the portable device." *Id.* at 6. In support of that argument, Plaintiff contends that Claim 184 of the '819 Patent "requires only that the terminal comprise 'an output component configured to present an interactive user interface'," and that Claims 1, 39 and 73 of the '584 Patent require that the terminal include a network interface. *Id.* at 6–7.

Plaintiff contend that Defendant's proposed construction improperly imports a limitation from the specification and that the embodiments Defendant cite are permissive and non-limiting. Response at 7. As a first example, Plaintiff contends that some embodiments use permissive language such as "may" or "can." *Id.* (citing '819 Patent at Abstract ("one embodiment"), 3:56–63, 4:52–56, 4:57–58). As a second example, Plaintiff contends that Defendant's citation of 4:52–58 of the '819 Patent ignores that the following sentence recites "[i]f the user's action 215 is one that is directed at executing on the TCAP 215, then the AT will not be involved in any execution." *Id.* at 7 (quoting '819 Patent at 4:66-5:1).

Plaintiff contends that Defendant is incorrect that a portable device cannot have its own input/output components and network interface. *Id.* at 8. With respect to input/output components, Plaintiff contends that the specification describes that the portable device "may optionally interconnect wirelessly with a peripheral device 912 and/or a control device 911," where the

8

specification describes control devices as including "card readers, dongles, finger print readers, gloves, graphic tablets, joysticks, keyboards, mouse (mice), trackballs, trackpads, retina readers, and/or the like." *Id.* (quoting '819 Patent at 24:46–48, 15:52–55). Plaintiff contends that this disclosure and other passages indicates—contrary to Defendant's argument—that the portable device can be controlled by its own input devices. *Id.* at 8–9 (quoting '819 Patent at 9:49–52, 22:55–57, Fig. 10, 24:46-48, 15:52–55, 22:51-54).

With respect to network interface, Plaintiff contends that the asserted claims disclose that the portable drive may comprise a network interface. *Id.* at 9–10 (quoting '819 Patent, Cl. 184 ("the portable device comprising: a network interface configured to enable the transmission of communications between the portable device and the communications network node"); *see also* '584 Patent, Cls. 1, 39, 73). Similarly, Plaintiff contends that other claims require that the terminal—and not the portable device—comprise a network interface. *Id.* at 10 n.7. (citing '819 Patent, Cl. 49). Plaintiff contends that the specification provides examples of portable devices having their own network interfaces. *Id.* at 10. As a first example, Plaintiff contends that Figure 10 depicts that portable device comprises network interface 1010. *Id.* As a second example, Plaintiff contends that the specification also discloses "a wireless component" such as a "Bluetooth" or "an IEEE 802.11b" chip and that "the [portable device] may optionally interconnect wirelessly with a peripheral device 912." *Id.* (citing 24:32–35; 15:56–64). Plaintiff also contends that the specification describes embodiments where the "portable device—not the terminal—handles the necessary network communications functionality." *Id.* (citing '819 Patent at 12:48–53, 10:30-34, 25:45–49, 25:60–64).

With respect to Defendant's prosecution history argument, Plaintiff contends that the statements were with respect to unasserted claims. *Id.* at 11. Plaintiff also contends that the "Iida

reference addressed in the prosecution arguments cited by [Defendant] does not disclose a portable device having a network interface; the network interface was provided by the terminal of Iida." *Id.*

In its reply, Defendant contends that the "asserted patents make clear that not just any computing device can be a terminal," but rather that the "terminal" should "[1] provide a compatible mechanism of engagement to the [portable device] and [2] provide an operating environment for the user to engage the [portable device] through the [terminal]." Reply at 3 (citing '819 Patent at 3:56–63). Defendant contends that its proposed construction is taken from the specification. *Id.* (citing '819 Patent at 4:57–58 ("The user may employ the AT's input peripherals as user input devices that control actions on the [portable device].")).

Defendant contends that Plaintiff is incorrect that "any component or function of the terminal, beyond a basic 'computing device,' must be explicitly recited in the claims," rather that the additional requirements in the claims "simply serve[] to further limit [Plaintiff's] alleged invention by specifying one way for the user to interact with the portable device." *Id.* at 4. Defendant further contends that the specification describes that a "terminal" should "provide [1] a way to connect the terminal to the portable device and [2] an operating environment for the user to engage the portable device through the terminal." *Id.* at 4 ('819 Patent at 3:56–63 ("Access terminals (ATs) may be any number of computing devices such as servers, workstations, desktop computers, laptops, portable digital assistants (PDAs), and/or the like. The type of AT used is not important other than the device should provide a compatible mechanism of engagement to the TCAP 130 and provide an operating environment for the user to engage the TCAP through the AT.")). Defendant contends that this functionality is not permissive, but is required. *Id.* at 4–5.

Defendant contends that Plaintiff conflates "*execution* of certain portable-device functionality with the *control* imparted by the 'terminal.'"   *Id.* at 5 (emphasis in original). Defendant contend, however, that "the portable device's ability to execute code says nothing about whether a user can control the portable device without the terminal."   *Id.*; *id.* at 7 (arguing same regarding Plaintiff's argument that the portable device may execute all functionality apart from a "small applet" that runs on the terminal).

With respect to Plaintiff's argument that that the specification describes that the portable device "may optionally interconnect wirelessly with a peripheral device 912 and/or a control device 911"—thus indicating that the portable device may have its own control device and that the terminal is not required to control the portable device—Defendant contends that Plaintiff improperly relies on a drafting error.   *Id.* at 6.   More specifically, Defendant contends that the specification consistently describes that "user input 911" is part of the "back-end portable device server and are only shown in the figures as being connected to the back-end portable-device server and not the portable device itself."   *Id.* (citing '819 Patent at Fig. 9, 13:61–66, 15:28–33).   Rather, at least according to Defendant, when the specification introduces the portable device in Figure 10, "there is no 'user-input device 911' depicted.   Rather, there is a terminal with a keyboard and mouse to control actions on the portable device."   *Id.*   Defendant contends that it is improper for Plaintiff to use a drafting error "to turn the patent disclosure on its head and allow for portable device control without using the terminal."   *Id.*

With respect to Plaintiff's counter-arguments to Defendant's prosecution history arguments, Defendant first contends that arguments directed towards one claim is relevant in interpreting other claims.   *Id.* at 7.   Defendant also contends that the "Examiner indicated that all claims were allowable in view of [Applicant's] prior arguments for claims 1, 92, and 138."   *Id.*

Defendant next contends that the same term in different claims should have the same meaning.  *Id.* at 7–8 (citing *In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016)).

In its sur-reply, Plaintiff first contends that Defendant does not argue that its proposed construction is rooted in the claim language, but rather that Defendant "seeks to substantially alter the claims using a handful of non-limiting specification embodiments[.]"  Sur-Reply at 4.  With respect to the passage that Defendant repeatedly cites ('819 Patent at 3:59–63), Plaintiff contends that this passage "says nothing about the terminal exerting 'control' over the portable device;" rather, Plaintiff contends that "providing a 'compatible mechanism of engagement to the portable device' simply means being compatible with an appropriate connection technology *e.g.*, USB or Bluetooth."  *Id.*

With respect to the Defendant's argument that the "small applet" running on the terminal is directed towards execution and does not prevent the requirement of user-control of the portable device through the terminal, Plaintiff contends that it makes "no sense" that a terminal that is only used as a display, but also controls the portable device.  *Id.* at 5.

With respect to Defendant's argument that there is not support in the specification that control device 911 in Figure 9 provides input to the portable device because any such description in the specification is merely a "draftsman error," Plaintiff contends that Defendant's assertion is "pure speculation" and that Defendant's expert conceded that there is "no reasonable basis to impute such error."  *Id.* at 5–6.  Plaintiff further contends that because the specification describes that at "[m]uch of the description of the TCAPS of FIG 9 applies to the TCAP [of FIG 10]," further supports Plaintiff's contention that the "incorporation of devices 911 (and 912) of Figure 9 into the TCAP in Figure 10" is not a drafting error.  *Id.* at 6 (quoting '819 Patent at 22:25–29).  Plaintiff

also contends that Defendant does not provide any reason why a portable device could not wirelessly connect with control device 911 or peripheral device 912. *Id.*

With respect to the prosecution history, Plaintiff first contends that Defendant is "unable to account for the multiple differences between the three claims (1, 92, and 138) referenced in the portion of the prosecution history it cites, and the Asserted Claims." *Id.* at 6–7. For example, Plaintiff contends that "multiple limitations in those claims expressly tie the first program code to the terminal—but no such limitations are present in the Asserted Claims." *Id.* at 7. Plaintiff also contends that Defendant cannot explain why those statements should also apply to the Asserted Claims, nor does Defendant respond to Plaintiff's explanation that the Iida prior art reference did not disclose the portable device having its own network interface. *Id.* at 7. Plaintiff finally contends that Defendant is incorrect that Examiner indicated that all claims were allowable in view of Applicant's arguments for Claims 1, 92, and 138; rather, Plaintiff contends that the Examiner's statement of allowance only recites "the substance of applicant's remarks filed on 07/18/2019 **with respect to the added claim limitation** point out the reason claims are patentable over the prior art of record." *Id.* at 7–8 (quoting Opening, Ex. A3 at IOENGINE-R-0002471) (emphasis in Plaintiff's brief).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff and finds that the proper construction is plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule

that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

      *Third*, the passage that Defendant heavily relies on ('819 Patent at 3:56–63) does not support its proposed construction.  Opening at 8, 9, 10, and 12; Reply at 1, 3, 4, 5, and 6.  This passage provides:

> Access terminals (ATs) may be any number of computing devices such as servers, workstations, desktop computers, laptops, portable digital assistants (PDAs), and/or the like. The type of AT used is not important other than the device should provide a compatible mechanism of engagement to the TCAP 130 and provide an operating environment for the user to engage the TCAP through the AT.

'819 Patent at 3:56–63.  The Court disagrees with Defendant that this particular passage limits the scope of "terminal" to require that it "control actions on the portable device."  As an initial matter, this passage does not even use the word "control."  Rather, this passage describes that the terminal (AT) should provide "a compatible mechanism of engagement" to the portable device.  '819 Patent at 3:59–63.  The Court agrees with Plaintiff that the plain meaning of "compatible mechanism of engagement" describes that the terminal needs to have a mechanism or interface that both terminal and portable device can use to engage, *i.e.*, connect together.  The sentences that immediately follow support the Court's conclusion.  These sentences describe various mechanisms to connect the terminal to the portable device.  *Id.* at 3:63–65 (USB connector), 3:65–67 (Bluetooth, WiFi, or other wireless connections), 3:67-4:3 (use of Java of Windows runtime environments to interact with the terminal's input/output mechanisms).  Therefore, taken as a whole, this passage describes that while there is a range of terminals with a variety of capabilities, the minimum capability that all terminals must have is the ability to connect with the portable device, *e.g.*, via USB, Bluetooth, WiFi, *etc.*  By contrast, the Court concludes that nothing in this passage explicitly or implicitly limits the scope of "terminal" to require that it "control actions on the portable device."

*Fourth*, Defendant's proposed construction improperly imports a limitation from the specification. *Phillips*, 415 F.3d at 1320 (Fed. Cir. 2005) ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.")).  In particular, Defendants heavily rely on the following passages from the '819 Patent: 3:56–63 (*e.g.*, Opening at 8), 4:48–56, (*e.g.*, Opening at 9), 4:57–58 (*e.g.*, Opening at 8), and 4:66–5:1 (*e.g.*, Reply at 5).  But the first passage, 3:56–63, is in context of the first embodiment which is described between 3:51–4:42.  The latter three passage are in the context of the second embodiment which is described between 4:43–5:46.  Even if these passages described that the terminal "control[s] actions on the portable device" as required by Defendant's proposed construction, Defendant has not shown that there is "a clear indication in the intrinsic record that the patentee intended the claims" to be limited to limitations from a preferred embodiment.  *Liebel-Flarsheim*, 358 F.3d at 913.

*Fifth*, Defendant's proposed construction improperly limits the claim scope by requiring the terminal to control the portable device.  More specifically, because both claims are "comprising" claims, the claims leave open the possibility that an unclaimed component could control the portable drive.  Given this possibility, because Defendant's proposed construction requires the terminal to control the portable drive, it improperly limits the claim scope.

*Sixth*, with respect to Defendant's prosecution arguments, the Court agrees with Plaintiff that Applicant did not disclaim any claim scope during prosecution.  In particular, Defendant does not appear to respond to Plaintiff's explanation that the Iida prior art reference did not disclose the portable device having its own network interface, which provides a distinct basis for patentability of the Asserted Claims.

Furthermore, contrary to Defendant's assertion, Examiner did not indicate that the claims were allowable based in view of [Applicant's] prior arguments for claims 1, 92, and 138.  Rather,

Examiner stated that the claims were allowable based on "the substance of applicant's remarks filed on 07/18/2019 *with respect to the added claim limitation* point out the reason claims are patentable over the prior art of record."  Opening, Ex. A3 at IOENGINE-R-0002471 (emphasis added).  Based on that statement, the Court agrees with Plaintiff that the Examiner's words were directed to amended claims, and not all claims.

Based on the foregoing, the Court concludes that Defendant has not met the "exacting" standard necessary to find that Applicant disavowed claim scope during prosecution.  *Hill-Rom*, 755 F.3d at 1371.

***Seventh***, the Court disagrees with Defendant that the term needs to be construed in order to aid the jury as "terminal" is not a particularly technical word and is one that a lay juror has likely encountered.

Therefore, for the reasons described above, the Court's final construction for "terminal" is plain-and-ordinary meaning.

## B.  Term #2: "first program code which, when executed…"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| #2: "first program code which, when executed…"<br><br>U.S. Patent No. 10,972,584, Claim 184<br><br>Proposed by Defendant | No construction is necessary. If a construction is necessary, the term should be construed to have its plain and ordinary meaning. | "first program code which, when executed by the terminal processor" |

**The Parties' Positions:**

The limitation that this term appears in is as follows:

16

> first program code which, when executed, presents an interactive user interface on the terminal output component, receives a command resulting from user manipulation of a user interface element of the interactive user interface, and causes a communication to the portable device processor in response to the command resulting from user manipulation of a user interface element of the interactive user interface;

'819 Patent, Cl. 184, Lim. [d.i].

Defendant contends that the problem with this limitation is that it is not clear which component—the portable device, terminal, or communication network node(s)—executes the first program code and sends the communication to the portable device processor. Opening 13. Defendant contends that failure to adopt its proposed construction will cause the term to be indefinite. *Id.*

Defendant contends that the communication network node(s) cannot be the component because "communication networks have no natural role in controlling a user interface—that is not the function of the communications network." *Id.* at 13–14. Defendant contends that it would be "non-sensical"—and thus indefinite—if the portable device processor was the component to execute the first program code. *Id.* at 14. More specifically, Defendant contends that if the portable device processor executed the first program code, then the portable device processor would "cause a communication" to the portable device processor, *i.e.*, to itself, which Defendant contends "simply does not make sense." *Id.*

Defendant contends that—by process of elimination—a POSITA would understand that the terminal processor executes the first program code and that the terminal processor "causes a communication to the portable device processor." *Id.* Defendant contends that this understanding is entirely consistent with the specification's description that the user controls the portable device through the terminal, which is the same argument Defendant made with respect to Term #1. *Id.*; *see also id.* at 8–12. Defendant repeats its arguments that during prosecution, Applicant "argued

that the '819 patent is patentable over Iida because user-control commands are received through the claimed "terminal," as opposed to being received through the portable device as in Iida." *Id.* at 14–15.

Defendant contends that if the terminal processor does not execute the first program code, it is unclear what component executes this code, and that the specification does provide any description as to what this unclaimed component might be. *Id.* at 16. Without the specification guidance as to what this component is, Defendant contends that the claim term is indefinite. *Id.* (citing *Nautilus*, 572 U.S. at 901).

In its response, Plaintiff first contends that the claim language does not require that the terminal processor execute the first program code, but rather than the claim language is "agnostic" as to what component executes the first program code. Response at 12. By contrast, Plaintiff contends that Claim 184 specifies that the portable device processor executes the second program code and that the portable device executes the third and fourth program codes. *Id.* at 12–13.

Plaintiff contends that Defendant does not explain "why there is any requirement that the claim must identify which processor executes that code, particularly when there are other claims in the '819 patent that likewise do not limit program code to being executed by a particular device or processor." *Id.* at 13. Rather, Plaintiff contends that Defendant's "alleged 'problem' merely recognizes the intentional breadth of the claim language, which does not limit which device or processor executes the first program code." *Id.*

With respect Defendant's argument that the portable device processor cannot be the component that executes the first program code because that would mean that the portable device processor "cause[s] a communication to" itself, Plaintiff contends that it is "commonplace for program code, in the course of execution, to send instructions or communications to the processor

running it, such as by executing one section of code to cause a communication to the processor to execute a different section of code." *Id.* Plaintiff contends that Defendant's expert admits that this situation could occur. *Id.* at 14. Plaintiff analogizes this operation to one part of the human brain sending a signal to another part of the human brain. *Id.* at 13–14. Plaintiff contends that the specification contemplates a similar situation wherein the operating system may communicate with itself. *Id.* at 14. Based on the reasoning in this paragraph, Plaintiff contends that Defendant is incorrect to allege that the claim is indefinite. *Id.* at 15.

In its reply, with respect to Plaintiff's last argument, Defendant contends that Plaintiff rewrites the claim in order to avoid indefiniteness from "causing <u>to</u> the portable device processor" to "causing <u>from within</u> the portable device processor." Reply at 8. Defendant further contends that Plaintiff's explanation that the retrieving code from memory meets the to "cause a communication to" the portable device processor is flawed because Plaintiff's explanation is "predicated upon a query from the processor to its memory, [which] may occur entirely within the processor itself." *Id.* at 9.

In its sur-reply, Plaintiff contends that the claim language of Claim 184 does not require that the terminal processor execute the first program code. *Id.* at 2–3. By contrast, Plaintiff contends that while Claim 184 is silent on what executes first program code, Claim 184 specifies what component executes other program codes and other claims in the '819 Patent; and other claims in related patents limit the execution of the first program code to specific processors. *Id.* at 3. Plaintiff contends that the patentee intentionally did not specify which processor had to execute the first program code and that the Court should defer to the patentee's choice of words. *Id.*

With respect to Defendant's argument that it is "nonsensical" for the portable device processor to "cause a communication to" itself, Plaintiff contends that this is the way programs

run and that the specification describes communications between the processor and memory. *Id.*, *id.* at 2 n.3 (citing '819 Patent at 14:17–40).

With respect to Defendant's argument communication between the portable device's processor and memory is "within or from" and not "to," Plaintiff contends that Defendant confuses the source of the communication with the destination. *Id.* at 3. More specifically, Plaintiff contends that the claim language only requires that the execution of the first program code "cause a communication to the portable device processor;" it does not, at least according to Plaintiff, limit the <u>source</u> of the communication. *Id.* Plaintiff contends that code retrieved from memory is a "*communication* from the memory '***to***' the portable device processor." *Id.* (emphasis in original).

**<u>The Court's Analysis:</u>**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff and finds that the proper construction is plain-and-ordinary meaning for the reasons that follow. ***First***, the Court disagrees with Defendant that the term is indefinite if the Court does not adopt Defendant's proposed construction. Defendant contends that the term is indefinite because it is nonsensical. But the proper test for indefiniteness is whether a claim, when viewed in light of the intrinsic evidence, "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910. Here, even Defendant understands that the claim language requires that execution of the first program code "causes a communication to the portable device processor." *See, e.g.*, Opening at 14, 16. As such, the Court concludes that a POSITA would as well. Therefore, the term is not indefinite.

***Second***, with respect to the meaning of the claim term, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771

F.3d at 1347. **Third**, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

      **Fourth**, the Court agrees with Plaintiff that because Defendant improperly narrows "to" to require an external source, or at least to exclude the destination from also being the source. But the plain meaning of "to" merely specifies a destination. As such, from an infringement perspective, it is irrelevant whether the portable device processor is the source of the communication; all that matters is that the communication is directed to the portable device processor. Furthermore, the Court agrees with Plaintiff that a POSITA would understand that memory providing the code at a branch target in response to a request from the processor is an example of a processor executing code (*i.e.*, a branch instruction) that "cause[s] a communication" (*i.e.*, sending code at the branch target) to the portable device processor (*i.e.*, from memory to portable device processor).

      **Fifth**, while the claim language does not specify what processor executes the first program, the Court does not agree with Defendant that this is an issue given that this a "comprising" claim which allows for the possibility of unclaimed processors that execute the first program code, and Defendant does not provide any legal authority to the contrary.

      **Sixth**, even if the term were nonsensical—which it is not for the reasons described above— it is improper for this Court to adopt Defendant's proposed construction in order to avoid a nonsensical result. *Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) ("This court, however, repeatedly and consistently has recognized that courts may not redraft claims, whether to make them operable or to sustain their validity.").

***Seventh***, for the reasons provided in the Court's analysis for Term #1, the Court finds that Defendant's proposed construction improperly imports a limitation from the specification. *Phillips*, 415 F.3d at 1320 (Fed. Cir. 2005) ("One of the cardinal sins of patent law [is] reading a limitation from the written description into the claims.").

Therefore, for the reasons described above, the Court's final construction for this term is not indefinite and plain-and-ordinary meaning.

### C. Term #3: "facilitate a key exchange"

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| #3: "facilitate a key exchange" U.S. Patent No. 10,972,584, Claims 1, 39, and 73 Proposed by Defendant | No construction is necessary. If a construction is necessary, the term should be construed to have its plain and ordinary meaning. | "initiate a key exchange" |

**The Parties' Positions:**

Defendant contends that the claim term requires construction because "there is no plain and ordinary meaning for the word 'facilitate'" in the context of the claims and relying on "plain and ordinary meaning" will only confuse the jury. Opening at 17. With respect to the latter reasons, Defendant contends that because the claim uses the phrase "key exchange" twice but with different verbs ("facilitates" and "employs"), an "affirmative" construction is needed to help the jury. *Id.*

Defendant contends that the intrinsic fails to shed any light as to the difference between "facilitates" and "employs." *Id.* at 18. Defendant also contends that dictionary definitions also fail to resolve the ambiguity between terms. *Id.* at 18–19.

Defendant contends that while different key exchange protocols exist, one device initiates the key exchange while another device responds to that initiation.  *Id.* at 19.  Based on that technical understanding, Defendant contends that "facilitates" must mean "initiates."  *Id.*

In its response, Plaintiff contends Defendant's argument is nonsensical because "facilitates" and "employs" are different words with different meanings—as exemplified by Defendant's dictionary definitions and confirmed by Defendant's expert—and construing "facilitates" as "initiates" changes the meaning of the term.  Response at 15–16.

Plaintiff contends that "initiates" is inappropriate because that word never appears in the claims, specification, or Defendant's dictionary definitions.  *Id.* at 16.  Plaintiff also contends that Defendant does not support its proposed construction with any intrinsic evidence.  *Id.* at 16–17.  Plaintiff further contends that "initiates" is an incorrect construction for "facilitates" because "device may facilitate a key exchange without initiating it."  *Id.*

In its reply, Defendant again contends that construction is necessary for the jury's benefit. Reply at 9.  Defendant further contends that Plaintiff nor Plaintiff's expert can articulate a difference between "facilitates" and "employs."  *Id.*  Defendant contends that given there are potentially different definitions for "facilitate," it is inappropriate to let the jury pick which definition controls.  *Id.* at 10.  Defendant finally contends that if "facilitates" and "employs" are not limited to particular steps, "it leads to the anomalous and legally improper result where any step in the key exchange process could equally be viewed as 'employing' and 'facilitating,' despite the requirement that these separate terms must carry different meanings."  *Id.*

In its sur-reply, Plaintiff again contends that Defendant does not support its proposed construction with any intrinsic evidence.  Sur-reply at 8.  Plaintiff also disagrees with Defendant that a jury will be confused by the meanings of "facilitates" and "employs," which Plaintiff contends are "commonplace" terms.  *Id.*  Plaintiff contends that Defendant's dictionary definitions show that there is a difference in meaning between those two terms.  *Id.*

With respect to Defendant's proposed construction, Plaintiff contends that "initiates" does not match any of the dictionary definitions Defendant provides for "facilitates," and that Defendant does not provide a reason from departing from its own dictionary definitions. *Id.* at 8–9.

With respect to Defendant's argument that "facilitates" and "employs" are not limited to particular steps, Plaintiff contends that this misreads its position and that "'facilitate' can include actions that are ancillary to the key exchange itself, such as providing information to authenticate the identity of the parties before the key exchange occurs." *Id.* at 9. Plaintiff finally contends that even if there is some overlap between "facilitates" and "employs," it does not mean that the two terms are synonymous. *Id.*

## The Court's Analysis:

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Plaintiff and finds that the proper construction is plain-and-ordinary meaning for the reasons that follow. ***First***, with respect to the meaning of the claim term, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, Defendant does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

***Third***, given that "facilitates" and "employs" are common English words, with a non-technical meaning, the Court does not believe that a jury will have any trouble understanding the meaning of these two words and applying the respective meanings to the facts.

***Fourth***, Defendant's proposed construction does not reflect the plain-and-ordinary meaning of this term. For example, Defendant's own dictionary definitions define "facilitate" as "to render easier the performance of (an action); the attainment of (a result); to afford facilities for, promote, help

forward (an action or process)," or "to bring about the transmission of (an impulse)."  Opening at 19. Defendant's proposed construction ("initiates") does not match any of the dictionary definitions, and Defendant does not explain why its proposed construction departs from its own dictionary definitions. Accordingly, to the extent that these dictionary definitions reflect the plain-and-ordinary meaning, Defendant's proposed construction does not reflect the plain-and-ordinary meaning, so the Court declines to adopt it.

*Fifth*, "initiates" does not appear in the claims or specification, and Defendant does not support its proposed construction with any intrinsic evidence.  *Phillips*, 415 F.3d at 1316 ("[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'") (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention…Thus, second, it is always necessary to review the specification to determine whether the inventor has used any terms in a manner inconsistent with their ordinary meaning.").  As such, the Court prefers not to adopt Defendant's proposed construction given its lack of intrinsic evidence support.

Therefore, for the reasons described above, the Court's final construction for this term is plain-and-ordinary meaning.

### D.  Term #4: The Preambles of All Asserted Independent Claims are Limiting

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| The Preambles of All Asserted Independent Claims are Limiting | IOENGINE objects on the ground that this is not a proper term for construction. To the extent this is a proper term for construction, no construction | The preambles of all asserted independent claims are limiting and, therefore, the elements recited in the |

| | | |
|---|---|---|
| U.S. Patent No. 10,447,819, Claim 184; U.S. Patent No. 10,972,584, Claims 1, 39, and 73<br><br>Proposed by Defendant | is necessary. If a construction is necessary, the term should be construed to have its plain and ordinary meaning. The preambles of the asserted claims describe the environment in which the claims operate. | preambles become part of the claim. |

**The Parties' Positions:**

Defendant contends that the preamble is limiting because the preamble provides (1) antecedent basis for terms that appear in the claim body and (2) structure essential for understanding the remaining terms in the body of the claims. Opening at 6. With respect to the former, Defendant contends that the preamble provides antecedent basis for "network interface," "portable device," and "communications interface." *Id.*

With respect to the latter, Defendant contends that the preamble is provides meaning and an understanding of the limitations in the claim bodies. *Id.* at 7. In particular, Defendant contends that because "network interface," "portable device," and "communications interface" were known at the time of the invention, the novelty of the invention is the combination and interaction of the three components. *Id.* Defendant contends that "[b]ecause this specific combination and interaction is only found in the preambles; the preambles are essential to understanding the Asserted Claims." *Id.* Defendant contends that because the claims do not "describe a structurally complete invention, the preambles do far more than simply state a purpose of the invention and must be considered limiting." *Id.* at 8.

In its response, Plaintiff agrees that the preambles are limiting, "but only insofar as they describe the environment in which the claimed portable device is configured to operate—not that [Defendant] must supply that environment in order for infringement to be found." Response at 17.

Plaintiff contends that the Asserted Claims claim a portable device, but the remainder of the preambles is simply the environment that the portable device operates in. *Id.* at 18. With respect to the '819 Patent, the preamble of Claim 184 provides:

> 184. A portable device configured to communicate with a communications network comprising a communications network node and with a terminal comprising an output component configured to present an interactive user interface comprising at least one user interface element configured to be manipulated by a user to enable control of the portable device, the portable device comprising:

Plaintiff contends that the portion of the preamble after "A portable device configured to communicate with" describes the characteristics of the communications network node and the terminal. *Id.* at 19. Plaintiff contends that "so long as the portable device is *configured* to communicate with those two elements, even in the absence of the communications network and the terminal, the *configuration* of the portable device suffices to show its capabilities and prove infringement." *Id.* (citing *Advanced Software Design Corp. v. Fiserv, Inc.*, 641 F.3d 1368, 1374 (Fed. Cir. 2011)).

With respect to the '584 Patent, Plaintiff contends that Claim 39 (a method claim) and Claim 73 (a system claim) "similarly recite a communications network and terminal that form the environment in which the claimed method is practiced of the system operates." *Id.*

Plaintiff also contends that Judge Bryson came the same conclusion involving preambles in predecessor patents. *Id.* (citing *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2022 WL 2800861, at *17 (D. Del. June 15, 2022) (Bryson, J.)).

Plaintiff contends that Defendant's proposed construction is not a construction, but a non-infringement position. *Id.* at 20. Plaintiff also contends that Defendant is incorrect that the preamble recites structural elements define the scope of the claim, rather, Plaintiff contends that the preamble describes how the portable device is to be configured, "meaning that the terminal

referenced in the preamble is merely a part of the environment in which the claimed portable device operates." *Id.*

In its reply, Defendant contends that "the claim elements "portable device," "terminal," and "communications network" are not isolated to the preamble, but rather are recited in the body of every independent claim." Reply at 2. Defendant contends that "the body of the claims cannot be performed without the "terminal" and "communications network" elements." *Id.*

With respect to *IOENGINE, LLC v. PayPal Holdings, Inc.*, found that "the preamble in the asserted *system* claim (unlike the apparatus claim) 'makes clear that the claimed system is required to 'implement' a terminal … [and] goes farther than merely defining the environment in which the system operates." *Id.* (citing *IOENGINE*, 2022 WL 2800861, at [*17]).

In its sur-reply, Plaintiff contends that Defendant ignores the fact that the "asserted apparatus claims recite a 'portable device ***configured to***' provide specific functionality, and neither the terminal nor communications network are necessary for the portable device to be so 'configured.'" Sur-Reply at 9 ('819 Patent, Cl. 184; '584 Patent at Cl. 1). Plaintiff makes similar arguments for the system and method claims. *Id.* Plaintiff contends that "only a specifically configured portable device is required by these claims; the 'terminal' and 'communications network' are recited in the preambles to describe the environment in which the portable devices are configured to operate; they do not form part of the claimed apparatus, system or method." *Id.* at 9–10.


**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, with respect to Claim 184 of the '819 Patent and Claims 1 and 39 of the '584 Patent, the Court agrees with Plaintiff

that the preamble merely describes the environment in which the portable devices are configured

to operate.  But for Claim 73 of the '584 Patent, the Court agrees with Defendant that preamble

describes a limitation that must be present in the accused system.

As a preliminary note, because the parties agree that the preamble is limiting and because,

after the Court's own cursory review, the Court does not see any reason not to adopt the parties'

agreement, the Court finds that the preamble is limiting.

With respect to the '819 Patent, the preamble of Claim 184 provides:

184. A portable device configured to communicate with <u>a communications network</u>
<u>comprising a communications network node and with a terminal comprising an</u>
<u>output component configured to present an interactive user interface comprising at</u>
<u>least one user interface element configured to be manipulated by a user to enable</u>
<u>control of the portable device</u>, the portable device comprising:

With respect to the '584 Patent, the preambles of Claims 1 and 39 provide:

1. A portable device configured to communicate with <u>(i) a communications network</u>
<u>comprising a plurality of communications network nodes and (ii) a terminal</u>
<u>comprising a processor, an output component, and a memory configured to store</u>
<u>program code, including first program code which, when executed by the terminal</u>
<u>processer, is configured to facilitate a key exchange between the terminal and the</u>
<u>portable device</u>, the portable device comprising:

39. A method implemented on a portable device comprising a processor, a memory
having executable program code stored thereon, a network interface configured to
enable transmission of communications between <u>the processor and a</u>
<u>communications network comprising a plurality of communications network</u>
<u>nodes</u>, a communication interface configured to enable transmission of
communications between the portable device and the terminal, <u>the terminal</u>
<u>comprising a processor, an output component, and a memory configured to store</u>
<u>executable program code, including first program code which, when executed by</u>
<u>the terminal processor, is configured to facilitate a key exchange between the</u>
<u>terminal and the portable device</u>, the method comprising:

The structure for each of these claims is similar, specifically, the preamble recites "A

portable device configured to communicate…" ('819 Patent, Cl. 184 and '584 Patent at Cl. 1) or

"A method implemented on a portable device comprising a processor, a memory having executable

program code stored thereon, a network interface configured to enable transmission of communications …").  The portions underlined in each preamble merely describe how the portable device needs to be configured.  But the fact that the portable device needs to be configured that way does not also require that those components need to be present in order to infringe the claim.  As such, these portions of each preamble merely describe the environment for which the portable device needs to be configured for.

With respect to the '584 Patent, the preamble of Claim 73 provides:

73. A system implementing (i) a communications network comprising a plurality of communications network nodes, and (ii) a terminal comprising a processor, an output component, and a memory configured to store program code, including first program code which, when executed by the terminal processer, is configured to facilitate a key exchange with a device coupled in communication with the terminal, the system comprising:

The structure of this preamble is different than the other three preambles.  Most importantly, the preamble recites "A system implementing …" as compared to "A portable device configured to …"  As described above, the latter describes how the portable device needs to be configured, but the former describes what components the system implements, or includes.  As such, the former does not describe the environment for which the portable device needs to be configured for, but rather describes additional components that must be present in the accused system.

The Court notes that its decision above exactly matches Judge Bryson's decision in the prior *IOENGINE* case.  Namely, Judge Bryson found that the apparatus claim that recited that the portable device "is configured to communicate with a terminal," "does not require that the accused infringer make, use, or sell (or offer to sell or import) the second device [(*i.e.*, the terminal)]." *IOENGINE*, 2022 WL 2800861, at *17.  But for the system claim that "implements" a terminal, Judge Bryson found:

That language goes farther than merely defining the environment in which the system operates or defining the capabilities of the system. To "implement" a terminal, the system must necessarily comprise a terminal. Accordingly, I construe the apparatus claims of the '703 patent as requiring proof that the accused infringer make, use, or sell (or offer to sell, or import) a terminal as well as the recited portable device.

*Id.*

Therefore, based on the parties' agreement that the preambles are limiting and for the reasons described above, the Court's final construction is that the preambles are limiting and that, with respect to Claim 184 of the '819 Patent and Claims 1 and 39 of the '584 Patent, the preamble merely describes the environment in which the portable devices are configured to operate, but with respect to Claim 73 of the '584 Patent, the preamble describes components that must be present in the accused system.

## IV.    CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below constructions as its final constructions.

**SIGNED** this 17th day of October, 2022.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| #1: "terminal"<br><br>U.S. Patent No. 10,447,819, Claim 1; U.S. Patent No. 10,972,584, Claim 1<br><br>Proposed by Defendant | The term should be construed to have its plain and ordinary meaning: "computing device" | "a computing device to control actions on the portable device" | Plain-and-ordinary meaning |
| #2: "first program code which, when executed…"<br><br>U.S. Patent No. 10,972,584, Claim 184<br><br>Proposed by Defendant | No construction is necessary. If a construction is necessary, the term should be construed to have its plain and ordinary meaning. | "first program code which, when executed by the terminal processor" | Plain-and-ordinary meaning |
| #3: "facilitate a key exchange"<br><br>U.S. Patent No. 10,972,584, Claims 1, 39, and 73<br><br>Proposed by Defendant | No construction is necessary. If a construction is necessary, the term should be construed to have its plain and ordinary meaning. | "initiate a key exchange" | Plain-and-ordinary meaning |

| Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction | Court's Final Construction |
|---|---|---|---|
| The Preambles of All Asserted Independent Claims are Limiting<br><br>U.S. Patent No. 10,447,819, Claim 184; U.S. Patent No. 10,972,584, Claims 1, 39, and 73<br><br>Proposed by Defendant | IOENGINE objects on the ground that this is not a proper term for construction. To the extent this is a proper term for construction, no construction is necessary. If a construction is necessary, the term should be construed to have its plain and ordinary meaning. The preambles of the asserted claims describe the environment in which the claims operate. | The preambles of all asserted independent claims are limiting and, therefore, the elements recited in the preambles become part of the claim. | '819 Patent, Claim 184; '584 Patent, Claims 1 and 39: The preamble describes the environment in which the portable devices are configured to operate.<br><br>'584 Patent, Claim 73: The preamble describes a component that must be present in the accused system. |