**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| IOENGINE, LLC,,, | § | |
| *Plaintiff* | § | |
| | § | **W-21-CV-1296-ADA-DTG** |
| -vs- | § | |
| | § | |
| ROKU, INC., | § | |
| *Defendant* | § | |
| | § | |
| | § | |

## ORDER DENYING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant Roku, Inc.'s ("Roku") Motion to Transfer Venue to the Northern District of California (NDCA).   ECF No. 24.   Plaintiff IOENGINE, LLC. ("IOENGINE") opposes the motion. ECF No. 48. Roku filed a reply in further support of its motion. ECF No. 52.  IOENGINE moved to strike new facts and arguments raised in the reply, or in the alternative, for leave to file a sur-reply.  ECF No. 54.  Roku opposed that motion (ECF No. 59), to which IOENGINE replied.  ECF No. 64.  The Court held oral arguments on the motions on September 21, 2022 and issued its preliminary rulings.  ECF No. 73.  This Opinion memorializes those oral rulings.

After carefully considering the parties' briefs, the arguments made by counsel, and the applicable law, the Court **DENIES** Roku's motion to transfer venue to the District of Northern District of California.  Furthermore, the Court **GRANTS** IOENGINE's motion for leave to file a sur-reply, and considers the sur-reply (ECF No. 54-4) as part of the factual record.

## I.     FACTUAL BACKGROUND

In its complaint, IOENGINE claims Roku infringed on U.S. Patent Nos. 10,447,819 ("the '819 Patent") and 10,972,584 ("the '584 Patent") (collectively, "the Asserted Patents").   The

patents are generally directed to a portable device that is configured to communicate with a communications network, through an access terminal, and using specific components and software programming. ECF No. 27 at 6.  The Complaint points to Roku's Streaming Players, the Roku Operating System (OS), and the Roku graphical User Interface (UI) used with the Roku Streaming Players as being the main Accused Products.  ECF No. 1 at ¶7.  Roku TVs are not asserted products in this litigation, however, as discussed below, Roku TVs share a significant amount of overlapping codebase with Roku's Streaming Players.  ECF No. 52 at 2. IOENGINE also alleges that Roku "instructs and encourages its customers, partners, and other third parties including in this District, to use the Roku Infringing Products" in a manner that infringes the Asserted Patents by (1) "providing an open streaming platform, on which Roku welcomes publishers and developers to grow their audience with Roku;" ](2) "present[ing] advertisement content through the Roku Advertising Framework;" (3) "us[ing] the Roku Infringing Products to make payments using Roku's payment platform;" or (4) "us[ing] the Roku Infringing Products to stream video and audio" (collectively, the "Accused Functionalities").  *Id.* at ¶25.

IOENGINE is a limited liability company organized under the laws of Delaware, with a principal place of business in Connecticut.  *Id.* at ¶ 2. The prior patent lawsuits filed by IOENGINE were all filed in Delaware.  ECF No. 27 at 8. The inventor of the Asserted Patents and sole member of IOENGINE, Mr. Scott McNulty, resides in Connecticut.  ECF No. 48 at 9.  Defendant Roku has its headquarters and principal place of business in the Northern District of California (in San Jose, California), and maintains an office in Austin, Texas, which Roku claims "is of no relevance to this case."  ECF No. 27 at 5.  As Defendant puts it, "Roku is not aware of a single piece of evidence or likely fact witness coming out of the Austin office or elsewhere in WDTX."  *Id.*

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.   DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Neither party disputes that venue could be proper in the NDCA. Roku maintains its principal place of business in San Jose, California, and thus operates a regular and established place of business within the NDCA. ECF No. 27 at 5. The Court therefore finds that venue would have been proper in the NDCA had the suit originally been filed there. The Court now analyzes the private and public interest factors to determine if the NDCA is a clearly more convenient forum than the WDTX.

### A.  The Private Interest Factors

#### i.   *The Cost of Attendance and Convenience for Willing Witnesses*

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience

to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at * 4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Roku, the witnesses with technical and financial knowledge of the Accused Products and Functionalities are all in the NDCA, with no willing witnesses in the WDTX. ECF No. 27 at 8, 10. IOENGINE disagrees and argues that "[v]enue discovery revealed dozens of employees in Roku's Austin office who participate in testing, research, development, and marketing of the accused products." ECF No.48 at 1. IOENGINE has two willing witnesses, and the parties dispute the convenience of those individuals. Each group of witnesses will be discussed in turn below.

1.   <u>Roku's Employees in the NDCA</u>

According to Roku, all of the engineers and financial employees most knowledgeable of the accused products are located in Roku's facility in San Jose, California.   ECF No. 27 at 10. Roku has identified the following potential willing witnesses in its San Jose headquarters: (1) Prateek Tandon, Vice President, Software Engineering, (2) Wade Brown, Senior System Architect, (3) Wim Michiels, Principal Engineer, (4) Cameron Baharloo, Director, Software Engineering, (5) Robert Burdick, Director, Developer Platform[1], (6) Steve Sprich, Senior Director, Global Product Marketing and Insights, and (7) Kevin Bright, Senior Director, Financial Planning & Analysis. ECF No. 27 at 10-11. Roku argues that these witnesses would need to travel from the NDCA to the WDTX, "requiring at least six hours of travel time each way, meals, and lodging expenses, in addition to time lost from work." *Id*. at 11-12.   Roku's Opening Motion relies heavily on a Declaration by Mr. Tandon, who states that these individuals "have knowledge and expertise relevant to the infringement allegations." ECF No. 27-1 at 2.  For five of the witnesses, Mr. Tandon declares them to be "very knowledge about" their given topic, and for one of the witnesses, Mr. Tandon declares him to simply be "knowledgeable."  *Id*. at 2-3. While Roku's Reply argues that Mr. Tandon identifies these to be "*the* Roku employees with *the most relevant knowledge*," even a cursory review of the declaration shows that to be an incorrect statement.  ECF No. 52 at 1 (emphasis added).   Furthermore, Mr. Tandon appears to identify these witnesses from among a

---

[1]In its Reply, Roku notified the Court that Mr. Burdick left the company and should now be considered a compulsory witness.  ECF No. 52 at 4.  Roku claims "this fact alone makes this [compulsory witness] factor favor transfer."  *Id*.  The Court declines to treat Mr. Burdick as an unwilling witness, as Roku withheld the fact that Mr. Burdick would no longer willingly testify (a fact it knew during venue discovery) from IOENGINE until after it filed its Opposition.  Any progress made during the pendency of Roku's transfer motion should not be used against IOENGINE, particularly on an issue first raised in a Reply.  *See e,g, In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020)).

limited subset of "numerous [NDCA] Roku employees" that Mr. Tandon has "familiarity with." ECF No. 27-1 at ¶ 8.

While the Court declines to agree that these are the employees with the most relevant knowledge, the Court agrees with Roku that the NDCA would be a more convenient forum than the WDTX for these six employees based out of its San Jose headquarters. The relevant consideration here is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, 2021 WL 4427899, at * 4. Thus, the Court finds the presence of these witnesses in NDCA weighs in favor of transfer. This does not, however, end the inquiry for this factor.

### 2.   Roku's Employees in Austin, TX

Roku's Motion claims there are "*no* willing witnesses that reside within this District" from either Plaintiff or Defendant. ECF No. 27 at 12. Furthermore, Roku represents to the Court that it "is not aware of a single piece of evidence or likely fact witness coming out of the Austin office or elsewhere in WDTX." *Id*. at 1.

IOENGINE's Opposition highlights "six likely Roku WDTX trial witnesses, each with particular relevant knowledge" based out of Roku's Austin office that seriously call those allegations into question. ECF No. 48 at 9. They are: (1) Ben Combee, a Senior Software Engineer, (2) Scott de Haas, Roku's Senior VP of Product Engineering and Operations, and founder and leader of Roku's Austin office, (3) Cameron Esfahani, a Principal Engineer in Roku's Austin Office, (4) Matthew Hodgins, a Senior Lead SW Engineer, (5) David Friedman, a Senior Audio Algorithm Software Engineer, (6) Matthew Sottek, Senior Software Engineer. ECF No. 48 at 11. IOENGINE lists these witnesses as being "expected trial witnesses" but also notes that, in

response to venue discovery, "Roku specifically identified at least ███ other Austin employees as having relevant knowledge" as well as "██ Roku technical employees in Austin with roles that are relevant to this case." *Id.* In reply, Roku argues that these WDTX employees "do not have near the same level of *relevant* knowledge as the California employees Roku identified." ECF No. 52 at 2 (emphasis added). In the next paragraph, Roku then appears to concede that the ██ WDTX employees are at least "marginally relevant," but argues that there would be more ███ "marginally relevant" employees in NDCA.[2] *Id.* The Court agrees and finds these additional ██ witnesses to have (at least) marginal relevance to the case, as they are described as having worked somehow on the accused products or functionalities.

As for the six willing Roku WDTX witnesses that IOENGINE specifically identifies in its briefing, the Court finds that IOENGINE has convincingly shown these individuals to possess particularly relevant knowledge to this case, and seriously calls into question the credibility of the statements made in Roku's Opening Motion and Declaration of Mr. Tandon. For example, Mr. Combee testified that he (and his Austin colleagues) work on code for the streaming players, and that his knowledge is also relevant to issues of indirect infringement. ECF No. 48 at 9. IOENGINE also has shown that Mr. Combee's knowledge is at least as (or more) relevant that Mr. Brown's knowledge (who joined Roku after Combee), and he is the only witness who was identified as having knowledge of Roku's API. *Id.* As for Mr. de Haas, he oversees "all of the product development for…Roku players and Roku sound bars." *Id.* at 10. Mr. de Haas previously testified for Roku at trial in Waco, and IOENGINE claims his "knowledge of Roku's accused hardware is

---

[2] While the ██ Roku WDTX employee headcount was compiled based on discovery responses with detailed descriptions provided during the venue discovery period (ECF No. 48-1 at 2), the ██-employee headcount (which was first raised in Roku's Reply) was based on an unsubstantiated, back of the envelope calculation where Mr. Tandon speculated that there were "████████████" of these employees in NDCA. ECF No. 54-1 at 5. These unnamed employees, along with their unknown roles and responsibilities, were never disclosed in discovery, and lacks any corroborating information. The Court therefore finds this information unhelpful and unpersuasive. In adding these new facts, Roku's Reply violated the WDTX Local Rules and exceeded the page limits.

essential," that Mr. de Haas's knowledge exceeds that of Mr. Tandon, and that Roku hasn't proffered a witness on certain topics that Mr. de Haas is knowledgeable in.  In Reply, Roku only says that de Haas has "no *unique* personal knowledge relating to IOENGINE's accusations…And Roku already identified Messrs. Sprich and Bright."  ECF No. 50 at 2 (emphasis added).  The Court notes that Sprich and Bright (two witnesses Roku identifies as willing), *and* de Haas *all* testified at the previous Roku trial in Waco.  Roku's counsel argued at the hearing that de Haas was omitted from Roku's witness list here because the previous case involved "different products."  The Court finds it dubious that the individual who oversees all product development would suddenly now be an irrelevant witness.  Regardless, the Court also finds that Mr. de Haas would likely be an individual with highly relevant knowledge and information in this case.  The Court also finds that Mr. Esfahani is also an individual with relevant knowledge of Roku's "SDK architecture" important to IOENGINE's indirect infringement allegations. Roku does not dispute IOENGINE's contention that none of Roku's NDCA witnesses were senior to him. Finally, the Court finds Mr. Hodgins to be a relevant witness on the issue of testing of Roku's players and OS.  Roku did not offer a witness on this topic.  Interestingly, after Mr. Hodgins was identified and deposed, Roku changed its stance on testing.  In its Opening Motion, Roku argues that the accused products were "tested in NDCA."  ECF No. 27 at 2.  The Reply backtracks to say that "the *vast majority* of testing of Roku players occurs in San Jose."  ECF No. 52 at 3 (emphasis added). Notwithstanding this sleight of hand that severely undercuts Roku's credibility, no other witness has been proffered with Mr. Hodgins's knowledge.

    In sum, venue discovery has conclusively shown that Roku's allegations that "there are *no* willing witnesses that reside within this District" (ECF No. 27 at 8), that "Roku's Austin office has no connection with the current dispute," (*Id*. at 3) that "Roku is not aware of a single … likely

fact witness coming out of the Austin office or elsewhere in WDTX" (*Id*. at 1), or that "Roku is not aware of any employee based out of Roku's Austin office with specialized knowledge of the Accused Products and Functionalities" (*Id*.) were either misleading or based on an inadequate investigation of the facts.  The Court finds that the presence of multiple relevant Roku employees in the WDTX weighs strongly against transfer.

### 3. IOENGINE's Willing Witnesses

IOENGINE identifies two willing witnesses.  Scott McNulty, the inventor of the Patents-in-Suit, resides in Rowayton, Connecticut.  ECF No. 27 at 8.  IOENGINE argues that it is more convenient for Mr. McNulty to travel to WDTX instead of NDCA, whereas Roku argues that he would have to travel a significant distance to testify, regardless of whether a trial was held in NDCA or WDTX.  *Id*.  IOENGINE also identifies Thomas Rzonca, who may be called to testify regarding the conception of the invention.  Mr. Rzonca is located in Eureka Springs, Arkansas, which is an approximate 3.3 hour commute to Waco, compared to the 5.7 hour trip to NDCA. ECF No. 48 at 9.

The Federal Circuit has previously held that when a witness must travel for a significant amount of time to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily in the determination of this factor. *In re Apple Inc.*, 979 F.3d at 1342. Because Mr. McNulty "will have to leave home for an extended period of time and incur travel, lodging, and related costs" in either venue, the Court finds it only slightly more inconvenient to travel to NDCA. *Id.*

Similarly, while Mr. Rzonca is located in a neighboring state with a significantly shorter travel time to WDTX, the Court can only consider this to slightly disfavor transfer.  As this Court has previously held, "the Court will not weigh the convenience of a plaintiff's witnesses against

transfer under this factor merely because the plaintiff attests that travel to this District would not represent an inconvenience upon witnesses with no apparent connection to this District." *XR Communications, LLC v. Google LLC*, No. 6:21-cv-00625-ADA, 2022 WL 3702271, at * 4 (W.D. Tex. Aug. 26, 2022). Even though IOENGINE's witnesses are willing to testify in Waco, Waco is not necessarily a more convenient forum for its witnesses.  IOENGINE cannot push this factor to weigh strongly against transfer simply because it chose this venue. IOENGINE's "choice of venue is already baked into the movant's burden." *Id.*  Mr. McNulty and Mr. Rzonca's willingness to testify in Waco does not carry significant weight in the analysis of this factor, and the Court finds that the NDCA and the WDTX are equally convenient venues for IOENGINE's two willing witnesses.

### 4.   Conclusion

Overall, the Court finds this private interest factor weighs against transfer. While Roku has identified six willing witnesses in the NDCA, it purports to have none in the WDTX.  The Court finds that IOENGINE has successfully identified several witnesses in WDTX that are indeed relevant to this case. The Court finds that IOENGINE's willing witnesses have no material impact on the outcome of this factor.

### ii.   *The Relative Ease of Access to Sources of Proof*

### 1.   Roku's Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs

in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

According to Roku, the NDCA is a more convenient forum because "although Roku documents relating to the Accused Products and Functionalities are stored on cloud servers, these documents are managed by Roku's IT group based in San Jose."  ECF No. 27 at 3.  Roku admits that it does not know where its servers are located and acknowledges that its documents can be accessed equally in either forum.  Roku cites to the Tandon declaration to show that "Roku's documents were…largely created in [] NDCA," (ECF No. 52 at 4), but as discussed above, the Tandon declaration did not appear to investigate, nor account for, the contributions of any WDTX employees.

The Federal Circuit has held that it is an error not to consider under this factor "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021). Additionally, the Federal Circuit has rejected the reasoning that this factor is neutral where the relevant evidence can be accessed electronically. *In re Apple Inc.*, No. 2022-128, 2022 WL 1196768, at * 4 (Fed. Cir. Apr. 22, 2022). Even though electronically stored information may be equally accessible in both districts and the location of Roku's servers is unknown, the Court must still consider the location of the document custodians and where the documents are created and maintained when evaluating this factor. Because (as discussed above), the Court finds several WDTX custodians to be relevant, the Court finds that some document custodians are likely located in WDTX and some of the relevant documents were likely created and are likely maintained in WDTX.  The Court therefore finds access to Roku's documents to be a neutral factor.

### 2.   IOENGINE's Sources of Proof

IOENGINE claims that its documents and physical prototypes must be transported by hand and are located both in Connecticut and with its New York City counsel.  ECF No. 48 at 5-6. IOENGINE argues that these physical sources of proof are more conveniently transported to WDTX.  Roku argues this argument is "specious. This material will have to be transported a significant distance either way."  ECF No. 52 at 4.  The Court finds that the WDTX is a slightly more convenient forum for IOENGINE's sources of proof.

### 3.   Conclusion

The Court finds that the relative ease of accessing sources of proof slightly weighs against transfer.

### iii.   *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018).

Roku claims that this factor is neutral or favors transfer because this Court lacks subpoena power over "any former Roku employees located in [NDCA]." ECF No. 27 at 10. Roku does not explicitly identify any unwilling witnesses. For its part, IOENGINE identifies five non-party witnesses that it claims would be unable to call in NDCA. Two are former Roku employees. Robin Edgell was a Senior Software Engineering Manager for Roku AI, managed Roku's UI/SDK group, and was identified by Roku as a person having relevant information before he left the company. ECF No. 48 at 6. IOENGINE claims Mr. Edgell has more information than Roku NDCA witness Cameron Baharloo, because unlike Baharloo, Edgell also worked on "'next-generation parts' for Roku's OS." *Id.* IOENGINE also identified Linmei Shu, a former Director of Software Engineering, who worked on the Roku OS and managed a large group of employees, including one of the potential party witnesses proposed by IOENGINE (Mr. Sottek). *Id.* at 7. Eric Vasquez worked at both Roku and relevant third-party ARM and is purported to have unique knowledge from having worked at both companies. *Id.* IOENGINE also lists two WDTX creators of Roku "channels" that it listed in its Complaint.[3]

IOENGINE also notes that significant third-party activities occur in Texas. It notes that the accused devices use ARM Holdings' CPU, and it cites to evidence showing that the ARM A Series was "largely developed in Austin by ARM's predecessor." ECF No. 48 at 3. It also notes that Roku's devices utilize chips manufactured by Texas Instruments. *Id.* Roku argues that "the fact that global companies ARM and TI manufacture hardware components that may be used in the accused products is irrelevant." The Court finds that the Complaint specifically lists chips in

---

[3] Roku did not challenge IOENGINE's assertions of these local channel creators until its Reply brief, which deprived IOENGINE of any right to conduct discovery on the issue. As such, the Court treats these two witnesses as uncontested.

the Complaint (at ¶ 31 discussing claim 184(c)) and that this information may be relevant to this case.

The Court concludes that the compulsory process factor weighs slightly against transfer. All potentially relevant third parties that have been identified are likely within the reach of this Court's subpoena power.

### iv. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010). However, the Federal Circuit has suggested that it is an error to determine that this factor strongly disfavors transfer based primarily on co-pending litigation with pending motions to transfer. *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).

Roku argues that this factor is neutral because the case is in its early stages this case and there is no co-pending litigation before this Court. ECF No 27 at 10-11. Roku acknowledges that there are currently several lawsuits in the District of Delaware involving patents related to the Asserted Patents, although it argues that accused technology does not involve streaming players

and the case should have no impact on this transfer motion.  *Id.*[4]  IOENGINE disagrees and argues

that this factor disfavors transfer because this case has advanced and is in the midst of claim

construction activity.  The Court agrees with Roku.  This case is indeed in its early stages, and the

Federal Circuit has repeatedly admonished this Court for considering the progress of such merits-

based activity.  *See e.g. In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020) ("A district court's

decision to give undue priority to the merits of a case [such as Markman briefing] over a party's

transfer motion should not be counted against that party in the venue transfer analysis.")  As such,

this factor is neutral.

## B.  The Public Interest Factors

### i.   *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion

between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers

the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566

F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and

when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the

transferee district court should not alone outweigh all those other factors." *Id.*

Roku argues that this factor is speculative and neutral.  ECF No. 27 at 17.  Roku

acknowledges that "this Court has an average time to trial that is quicker than NDCA" but that

NDCA "maintains a lower median, and average, number of open cases per judge despite any

COVID- related delays." *Id.*  The Court concludes that this factor weighs against transfer. "[T]he

speed with which a case can come to trial and be resolved" is a consideration under this factor. *In*

---

[4] IOENGINE's Opposition argues that should the Court find transfer appropriate, that Delaware
(and not NDCA) would be a clearly more convenient forum.  ECF No. 48 at 14 n.5.  Roku does not
offer respond to this point.

*re Genentech, Inc.*, 566 F.3d 1338 at 1347. Despite this Court's large docket, it has proven to resolve cases expeditiously—this Court has consistently been able to bring patent cases to trial within two years after filing a complaint.[5] The recent addition of the undersigned Magistrate Judge to this Court will only serve to improve or maintain these time-to-trial statistics and keep cases on track. The Federal Circuit has emphasized the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). The data available to the Court indicates that the WDTX would likely be able to resolve this dispute more quickly than the NDCA.

The Court finds this factor weighs against transfer.

### ii.   *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated

---

[5] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Roku claims that the WDTX has "no true connection to this dispute" because IOENGINE has "no ties to Texas" and Roku's Austin office was not open at the time the streaming players were developed.  ECF No 27 at 16.

In response, Roku argues that the NDCA has a significant local interest in this case because the software of the accused products was developed in the NDCA. ECF No. 24 at 18. Furthermore, Roku argues that the NDCA has a local interest because it operates its headquarters out of this District. *Id.* at 19. IOENGINE responds that venue discovery has shown WDTX to have numerous employees who likely have worked on the accused products and functionalities.  IOENGINE argues that "no fewer than ■ technical employees in its Austin office work on the accused

products and functionalities," that "████ have particularly relevant responsibilities and work with California employees on accused functionalities," and that "numerous additional Austin employees work on the Roku OS or have roles applicable to *both* accused and unaccused products." *Id*. at 2-3.  As Roku's own employees testified, the Roku OS runs on all of the different Roku devices, ████████████████ with RokuTVs, and share Roku's UI features. *Id*. Further, IOENGINE notes that depositions taken during venue discovery showed that Austin employees test "[a]nything related to the Roku products," and that "around ██ people in the Austin office, work in cloud-based roles that are equally applicable to Roku TV and Roku streaming players." ECF No 48 at 3 (internal quotations omitted).  The Court finds (as it has in the previous sections above) that that these WDTX employees likely possess relevant knowledge.  Similarly, the Court finds that the Texas third-parties identified by IOENGINE (ARM and Texas Instruments) likely also have some local interest in the case.

The Court finds that both the WDTX and NDCA likely have a local interest in this suit. While Roku operates its headquarters out of the NDCA and claims that (numerically) more individuals who worked on the accused product are located there, the Court also finds that the WDTX has a local interest in this suit, particularly as it pertains to the dozens of employees and third parties identified during discovery.  Because there are competing local interests, with competing employees counts that have worked on the accused products and instrumentalities, the Court finds this factor is neutral.

### iii.   *Familiarity of the Forum with the Law That will Govern the Case*

Roku argues that this factor is neutral.  ECF No. 27 at 14.  IOENGINE argues that Roku has raised issues of spoliation, which it claims is "governed by Fifth Circuit law." ECF No. 48 at 15.  IOENGINE further claims that the "NDCA would most likely apply Ninth Circuit standards, which are different than the Fifth Circuit's…and [t]hus, transfer would raise issues with conflict

of laws and the law to be applied, which is based on Fifth Circuit standards.  The Court agrees with Roku and trusts that any Court (whether it be in NDCA or WDTX) would faithfully apply the applicable governing law properly.  The Court thus finds this factor to be neutral.

    *iv.*    ***Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law***

The parties agree that the same issues apply for public factor 3 (just addressed) as they do for public factor 4.  The Court similarly finds this factor to be neutral.

## IV.    CONCLUSION

Having considered the private and public interest factors, the Court finds that four of the factors are neutral, four disfavor transfer, and none favor transfer to the NDCA. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a *clearly* more convenient forum. Here, the availability of the compulsory process for non-party witnesses, practical considerations, and court congestion weigh against transfer. Roku has failed to meet its burden of showing that the NDCA is a clearly more convenient forum than the WDTX. The Court's conclusions for each factor are summarized in the following table:

The purpose of venue discovery is to investigate and challenge the assertions made by a Defendant in the Motion to Transfer and its accompanying declarations.  Here, Plaintiff has successfully rebutted those assertions and even discredited many of the statements made therein.

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly Against Transfer |
| Cost of attendance for willing witnesses | Against Transfer |
| Availability of compulsory process to secure the attendance of witnesses | Slightly Against Transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Against Transfer |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Roku's Motion to Transfer Venue to the District of Northern District of California is **DENIED** (ECF No. 27).  The parties are to email a redacted version of this Order within 7 days to the Court's law clerk.

**SIGNED** this 10th day of October, 2022.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE