# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| IOENGINE, LLC,<br>    *Plaintiff/Counterclaim Defendant,*<br><br>v.<br><br>ROKU, INC.,<br>    *Defendant/Counterclaim Plaintiff.* | C.A. No. 6:21-cv-01296-ADA-DTG<br><br>JURY TRIAL DEMANDED |

**PLAINTIFF IOENGINE, LLC'S OPPOSITION TO DEFENDANT ROKU, INC.'S MOTION FOR LEAVE TO SERVE THE SUPPLEMENTAL EXPERT <u>REPORTS OF DR. SAMUEL RUSS AND DR. INGRID HSIEH-YEE</u>**

**I.     INTRODUCTION**

Roku's Motion for Leave is a belated attempt to backfill deficiencies in the reports of Roku's proffered experts, Dr. Hsieh-Yee[1] and Dr. Russ.  On May 18, 2023 IOENGINE deposed Dr. Hsieh-Yee, eliciting testimony that substantially undermined her opinions regarding the public-availability of certain prior art references, which were relied upon by Dr. Russ.  Now, after the deadlines for opening *and* rebuttal expert reports have passed, and with just days remaining in expert discovery, Roku seeks to shoehorn new public availability opinions into a Second Supplemental Report to the Expert Invalidity Report of Dr. Samuel Russ (the "Second Supplemental Russ Report").[2]  Roku cannot substantively rehabilitate Dr. Hsieh-Yee by shifting a fix for her now undermined opinions to Dr. Russ.

Roku's Motion is highly prejudicial to IOENGINE. Not only would it give Roku a 'second bite' at the apple, but service of the Second Supplemental Russ Report would require additional depositions and service of one or more supplemental rebuttal reports by IOENGINE's experts, none of which could be accomplished by the June 22nd close of expert discovery or without moving deadlines for case dispositive and *Daubert* motions.  Moreover, Roku's motion is based on misdirection: it asserts that the proposed Second Supplemental Russ Report is simply to correct a

---

[1] Prior to Roku filing the instant motion, IOENGINE informed Roku that it does not oppose Roku's Motion to serve the Supplemental Report to the Expert Report of Dr. Ingrid Hsieh-Yee (the "Supplemental Hsieh-Yee Report"), which appears to be directed to correcting a clerical error. However, as described below, Roku improperly attempts to address *substantive* deficiencies in Dr. Hsieh-Yee's reports with a second supplemental Russ report.

[2] Roku previously submitted a First Supplemental Russ Report on May 23, 2023 for the limited purpose of addressing the depositions of two PRISMIQ witnesses due to Roku's late disclosure of those witnesses.  Roku's instant Motion does not address that First Supplemental Russ Report, and IOENGINE reserves all rights to challenge the admissibility of testimony based on the contents of the First Supplemental Russ Report because of Roku's belated disclosure, in March 2023, of witnesses it had been working with for more than five months, since October 2022.

1

documentary exhibit, fails to point out new substantive arguments in that Report, and obfuscates the impact of those new arguments on the merits of this case. Roku's Motion should be denied.

## II. LEGAL STANDARD

This Court has made clear that "Rule 26(e) is not a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through a 'supplemental' report. [] Supplemental disclosures are only permissible as a means of 'correcting inaccuracies or filling the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure.*'" *Daedalus Blue LLC v. SZ DJI Tech. Co.*, No. W-20-CV-00073-ADA, 2022 WL 831619, at *2 (W.D. Tex. Feb. 24, 2022) (italics original).

Courts in the Fifth Circuit look to four factors to determine whether an untimely disclosure is substantially justified or harmless: (1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with the discovery order. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*, 73 F.3d 546, 5772 (5th. Cir. 1996). The party seeking to use the untimely disclosed information has the burden of demonstrating that its violation of Rule 26 was substantially justified or harmless. *See, Maguregui v. ADP, LLC*, 16-CV-121, 2017 WL 5473484, *2 (W.D. Tex. Apr. 10, 2017).

## II. ARGUMENT

This Motion arises from the flawed May 4, 2023 expert reports of Dr. Hsieh-Yee and Dr. Russ. Dr. Russ, Roku's proffered invalidity expert, relied heavily on the report of Dr. Hsieh-Yee for the "public availability" of certain alleged prior art references. However, in her May 18th deposition, it was revealed that many of Dr. Hsieh-Yee's opinions about public availability were without a proper basis and relied on improper, unproduced, or non-existent materials, leaving many of Dr. Russ's opinions about the prior art unsupported. Roku's Motion is no simple

correction of a 'clerical error.'  Instead, it is an attempt to backfill the substantial deficiencies in Dr. Hsieh-Yee's opinions by correcting and shifting the testimony to Dr. Russ.[3]  *See Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997) (affirming district court denial of leave to supplement where party sought to backfill opinions "of its expert witness [that] did not go well.").  Roku's Motion should be denied.

### A.  The HDCP Supplement is Not Justified

Roku asserts that the need for a Second Supplemental Russ Report is based on a mere clerical error by Dr. Hsieh-Yee regarding an "illegible" copy of an HDCP specification document that was Exhibit 0001 to Dr. Hsieh-Yee's report.  But the underlying error in Dr. Hsieh-Yee's report was no mere clerical error.  Rather, Dr. Hsieh-Yee sought to use a ***2023*** document, Ex. 0001 to her report, to verify 'public availability' in February ***2000***.  In deposition, Dr. Hsieh-Yee *admitted* that the earliest public availability she could establish for Ex. 0001 was sometime in *2023*—making Ex. 0001 not prior art under any section of 35 U.S.C. 102.[4]  *See, e.g.*, Ex. 1, Hsieh-Yee Trans. (excerpted), at 105:8-21 ("Q[:] But you don't know exactly when the document in Exhibit 0001 … was available to the public, correct? … A[:] I think this is the copy, 0001, Exhibit 0001, is a copy that I obtained from the DCP website [in 2023]."

Dr. Russ's opening report relied on a document (ROKU0014526) that appears to be identical to Dr. Hsieh-Yee's Exhibit 0001—meaning Dr. Russ relied on a document that has not

---

[3] To the extent Roku's Motion is in furtherance of an attempt to shift public accessibility testimony to Dr. Russ and so avoid calling Dr. Hsieh-Yee at trial, such purpose is equally improper.

[4] Roku incorrectly asserts that IOENGINE does not dispute that HDCP is prior art.  Motion at 4.  IOENGINE does not dispute that certain versions of the standard referred to as "High Bandwidth Digital Content Protection" may qualify as prior art.  However, IOENGINE disputes that Roku has established when the *specific documents* Dr. Russ relies on were publicly available and, therefore, that the *contents of those documents* are prior art.

3

been established as prior art. In doing so, he explicitly did not form an opinion as to the public availability of that document on his own. *See* Mot. at Ex. E, at 36. Now, Dr. Russ seeks to modify his opinion to rely on a *different* document—an unauthenticated "WayBack Machine" printout.[5] *See id* (ROKU0014526 replaced with ROKU0176488). In other words, Dr. Russ seeks to excise his reliance on Dr. Hsieh-Yee's flawed opinions regarding the undisputedly *non*-prior art Exhibit 0001 and substitute new opinions regarding a different, unauthenticated document that was not adequately discussed in Dr. Hsieh-Yee's Report or Dr. Russ's initial report. To the extent that Dr. Russ had access to the unauthenticated "WayBack Machine" printout when he submitted his report, his belated supplement is unjustified. To the extent that he did not, there is no basis to expand his opinion now to a document that he did not have access to before his report was due.

### B. Roku Obfuscates Additional, Unjustified Additions

Critically, despite what Roku presents in its Motion, the proposed Second Supplemental Russ Report reveals meaningful, substantive additions related to a Sony KF-50XBR800 television, a PRISMIQ MediaPlayer User Guide, and a "PocketPC" reference that are *entirely unrelated* to any 'corrected' HDCP document. Roku seeks to screen these additions from scrutiny by opaquely referring to them only as "three instances of additional public accessibility that Dr. Russ considered when rendering his opinions." Mot. at 3. Roku's attempt to bury these additions seeks to mislead

---

[5] Roku seeks to downplay the differences between the document Dr. Russ previously relied on and the 'replacement' document as being limited to correcting "illegible" images. Mot. at 2. But this is not a case of a low-resolution or "illegible" image. Instead, it appears that portions of the original document were redacted by the publisher, which Dr. Hsieh-Yee was unable to explain. *See,* Hsieh-Yee Trans. At 99:3-20 ("Q[:]…[I]s it possible those figures were removed by DCP? … A[:] At this point I don't recall how the document looks like on their website, so I cannot give you any explanation about, and I'll speculate on why these two, specifically these two, are not showing up. Q[:] [I]s it possible that at some point DCP removed those figures from the specification?...A[:]…I don't know.").

the Court into permitting entirely unjustified supplementation under cover of a separate, unrelated 'clerical' error.  For this reason alone, Roku's Motion should be denied.

2. *Roku Fails to Justify the "Sony KF-50XBR800" Supplement*

The original Russ Report refers to a "Sony KF-50XBR800 television set," but provides no date or other basis to conclude that it qualifies as prior art.  Instead, Dr. Hsieh-Yee opined that certain Sony "XBR Plasma" television sets were "available for sale by January 2003." *See* Ex. 2, May 4, 2023 Hsieh-Yee Report, at ¶93.  However, in deposition, it became clear that Dr. Hsieh-Yee's opinions regarding the Sony XBR televisions were unfounded and unreliable,[6] including because Dr. Hsieh-Yee's opinions were based on the purported contents of a 'website' that does not exist, *see, e.g.*, Ex. 1, Hsieh-Yee Trans., at 220:12-17; 214:2-16, and on two Appendices to her report, which she admitted could not be relied upon.  *See id.* at 232:4-233:12.[7]

Faced with the realization that it has been left with no way to establish the Sony KF-50XBR800 television as prior art, Roku seeks to backfill Dr. Russ' opinion with a new footnote 3 on page 24 of the Second Supplemental Russ Report.  This addition has **no relationship whatsoever** to Roku's proffered justification for the supplement: a purported "discrepancy" in the Hsieh-Yee Report regarding the separate **HDCP** reference.  Instead, Roku seeks to have Dr. Russ render an opinion about the same two Appendices Dr. Hsieh-Yee can no longer reliably opine on (ROKU0176365 and ROKU0176402-0176404) and on an entirely new document that is not referenced anywhere else in Dr. Russ' original report, "Sony_Roku_0000683."  *See* Mot., Ex. E,

---

[6] *See* Ex. 3, Webster Report, at ¶¶62-70.

[7] Dr. Hsieh-Yee acknowledged that App'x 0006A referred to different television products and "does not say when [the Sony Grand Wega XBR LCD TVs were] available for purchase." Hsieh-Yee Trans. at 228:15-21. *See also id.* at 222:17-223:22; 243:6-22.  App'x 0006B contains only an ambiguous reference to "current and *future*" devices.  *See, e.g.*, *id.* at 232:4-233:12.

5

at 24 n.3. The Sony KF-50XBR800 television supplement in footnote 3 should be denied.

### 3. *Roku Fails to Justify the "PRISMIQ" Supplement*

The original Russ report relied on Dr. Hsieh-Yee to establish "the device sales and the document accessibility" of a "PRISMIQ MediaPlayer User Guide," *see* Ex. 4, May 4, 2023 Russ Report, ¶ 165, which Dr. Hsieh-Yee opined was supposedly available on March 7, 2003. *See* Ex. 2, May 4, 2023 Hsieh-Yee Report, ¶ 145. However, Dr. Hsieh-Yee now states that she meant to refer to a *different* document that was instead available on *November 4,* 2003. *See*, Mot., Ex. H, at 1. But Dr. Hsieh-Yee failed to provide any "WayBack Machine" archives or other evidence showing public availability of that new November 4, 2003 document. To backfill this deficiency, Roku now seeks to supplement *Dr. Russ'* report with a "WayBack Machine" reference purportedly showing public availability on November 4, 2003. Again, this addition has ***no relationship whatsoever*** to Roku's proffered justification for the ***HDCP*** supplement and should be denied.

### 4. *Roku Fails to Justify the "PocketPC" Supplement*

The original Russ Report relied on Dr. Hsieh-Yee as a basis for the public accessibility of a "Pocket PC" reference. *See* Ex. 4, May 4, 2023 Russ Report, at ¶ 366. Dr. Hsieh-Yee, relying in part on a "WayBack Machine" printout, opined the Pocket PC reference "would have become publicly accessible no later than September 13, 2003." Ex. 2, May 4, 2023 Hsieh-Yee Report, ¶ 57. However, in deposition, it became clear that Dr. Hsieh-Yee's opinions regarding the PocketPC reference were unfounded and unreliable, including because Dr. Hsieh-Yee provided improper opinions regarding the accuracy of information in a document without sufficient verification or any authenticating testimony from the source. *See, e.g.*, Ex. 3, Webster Report, at ¶¶ 37-41.

To backfill Dr. Hsieh-Yee's deficiency, Roku seeks to supplement *Dr. Russ's* report with the "WayBack Machine" printout, but which Dr. Russ now opines shows availability a day earlier, on September *12*, 2003. In addition, Dr. Russ adds additional opinions regarding his interpretation

6

of the contents of the document and a purported "publication date." Mot., Ex. E, at 123 n.6. In addition to being outside of Dr. Russ's expertise, the PocketPC supplement has **no relationship whatsoever** to Roku's proffered **HDCP** justification, and it should be denied.

### C. Roku's Delay is Unjustifiable

Roku offers no legitimate justification for its failure to comply with this Court's Scheduling Order. Even if Roku's assertion that it only became aware of the "HDCP discrepancy" on May 18th is correct, Roku waited **19 days** to file its Motion*.* There is no reason Roku could not have promptly moved this Court for leave. *See Harmon v. Georgia Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 37 (5th Cir. 2012) ("Appellants are unable to provide an adequate explanation for their failure to provide a timely expert report when the necessary information was entirely under their own control.") Moreover, Roku's assertion of 'timeliness' is regarding the one HDCP document only. Roku does not even attempt to show timeliness regarding the Sony KF-50XBR800, PRISMIQ, or PocketPC supplements. Indeed, in each of those cases Roku makes only the ambiguous statement that they are "three instances of additional public availability evidence *that Dr. Russ considered when rendering his [May 4th] opinions*," Mot. at 3 (emphasis added), ostensibly meaning that Roku was aware of the information no later than May 4th, but delayed *more than a full month* before seeking leave to supplement—clear evidence of a *lack* of diligence.

In addition, Roku misrepresents the timeline, describing the proposed Russ supplement as having been provided "eight days after the [Hsieh-Yee] discrepancy was raised." Mot. at 2. Roku omits that the Second Supplemental Russ Report was only provided to IOENGINE on the evening of May 24th, with just *one day* remaining before the May 26th Russ deposition. IOENGINE promptly objected to Roku's attempt to supplement without leave of the Court. *See* Ex. 5, May 24, 2023 email from Chuebon to Rollins. Roku then waited nearly two more weeks to move for

leave—doing so only *after* the Russ deposition and the deadline for rebuttal reports.

### D. Roku's Actions Undermine its Assertion that The Second Supplemental Russ Report is Important to the Case

Roku argues that the HDCP supplement is "particular[ly]…important to several aspects of the case." Mot. at 6. But Roku's assertion is belied by its **19-day** delay in seeking leave of the Court. If the HDCP supplement were so important, surely Roku would have been more diligent in seeking the necessary relief. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 381–82 (5th Cir. 1996) ("'[T]he claimed importance of Plaintiffs' expert testimony merely underscores the need for Plaintiffs to have complied with the court's deadlines[.]"). Separately, Roku fails entirely to address the supposed importance of the Sony KF-50XBR800, PRISMIQ, and PocketPC supplements. *See* Mot. at 6. If the newly-added information were so important, Roku would not have waited more than a month to seek leave of the Court and would not have buried its submission of those supplementations in a single, ambiguously worded sentence. *See id.* Regardless, the importance of untimely evidence "cannot singularly override the enforcement of local rules and scheduling orders." *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 509 (5th Cir. 1999).

### E. The Second Supplemental Russ Report is Highly Prejudicial to IOENGINE

Roku avers that the Second Supplemental Russ Report "do[es] not change the merits or content of [the] report in any way," Mot. at 1, citing to *Core Wireless* for the proposition that there is no prejudice "where the supplemental report simply provides 'additional detail' to the expert's previous opinion." Mot. at 6. Roku is incorrect. Despite their relative brevity, the Sony KF-50XBR800, PRISMIQ, and PocketPC supplements provide entirely new opinions regarding the public availability of alleged prior art, requiring additional depositions and rebuttal reports. *See e.g., Batiste v. Lew*is, 976 F.3d 493, 501 (5th Cir. 2020) ("[A]llowing Batiste to submit the report after the discovery deadline would have prejudiced the defendants, who would need to redepose

8

Batiste about his qualifications and methodology."). Indeed, Roku's argument regarding the potential prejudice to IOENGINE does *not once* address those Sony KF-50XBR800, PRISMIQ, or PocketPC supplements, feigning that the only change is a "ministerial correction" regarding a single HDCP document. *See* Mot. at 5.

Roku cites to *Perdiemco* and *Navico* for the assertion that "supplemental reports do not prejudice the opposing party when served with ample time before trial." Mot. at 5. However, unlike here, in *Perdiemco* the supplemental report "respond[ed] to new opinions previously undisclosed by [the objecting party] in substantive interrogatory responses," which the court found significant in permitting the supplement. *See PerdiemCo, LLC v. IndusTrack LLC,* No. 215CV00727JRGRSP, 2016 WL 8188948, at *2 (E.D. Tex. Oct. 25, 2016). Here, there were no "previously undisclosed" opinions by IOENGINE regarding *any* of the proposed supplements. And in *Navico*, the supplement was permitted because it involved expert analysis that the moving party had ***not*** previously considered as necessary before being raised as an issue by the objecting party. *Navico, Inc. et al v. Garmin International, Inc. et al.*, 2-16-cv-00190, Dkt. No. 158, at 3 (E.D. Tex. July 4, 2017). Here, the new material is in regard to the public accessibility of alleged prior art references, which was the express purpose of Dr. Hsieh-Yee's 62-page May 4, 2023 report, clearly not an issue that Roku had previously considered unnecessary.

Moreover, the prejudice to IOENGINE is palpable. This case is just four months from trial, with no room for lengthy delays. The deadlines for opening and rebuttal expert reports have passed, and expert discovery closes in just six business days. It is too late for IOENGINE to depose Dr. Russ on the four additions to his report[8] and then for IOENGINE and its experts to prepare and

---

[8] Roku faults IOENGINE for not questioning Dr. Russ on the supplement (for which leave of Court had not even been requested) during his deposition. Mot. at 5. But the Second Supplemental

submit proper rebuttals, which would themselves potentially be subject to deposition, all before the June 22nd close of expert discovery. Nor should the close of expert discovery be delayed on the basis of Roku's desired supplementation. There is a June 29th deadline for a reduction in asserted claims and prior art references and a July 6th deadline for case dispositive and *Daubert* motions following closely on the heels of the close of expert discovery.[9] This case is on a tight schedule, with trial just a few months away—any delay is highly prejudicial to IOENGINE. *See Daedalus Blue*, 2022 WL 831619, at *5 ("A continuance stemming from Pellegrino's late-filed second report would flout the Court's scheduling order, require the re-opening of expert discovery, and further delay the resolution of this case."); *Reliance Ins.*, 110 F.3d at 257–58 (citing *Geiserman v. MacDonald,* 893 F.2d 787, 791 (5th Cir.1990) ("[T]o allow plaintiff to add more material now and create essentially a new report would prejudice the defendants, who would then have to get an expert to address these last-minute conclusions, and thus disrupt the trial date in this case.").

## III. CONCLUSION

For all of the reasons discussed above, IOENGINE respectfully requests that Roku's Motion to serve the Second Supplemental Russ Report be denied.

---

Russ Report was provided to IOENGINE with just a single business day remaining before that deposition. *See Daedalus* Blue, 2022 WL 831619, at *6 ("Daedalus's suggestion that DJI could have deposed Pellegrino the day after the second report was filed is contrary to common sense."). Roku also notes that "IOENGINE is scheduled to depose Dr. Russ" in the remaining days of expert discovery. Mot. at 5. But that deposition is on Dr. Russ' separate rebuttal report on *non-infringement*. Moreover, it is scheduled for June 20th, just two days before the close of expert discovery, leaving no time for IOENGINE to then prepare and serve a rebuttal report on Dr. Russ' new opinions on the public accessibility of the information addressed in the four supplements.

[9] As the Sony KF-50XBR800, PRISMIQ, and PocketPC supplements relate to *public availability*, a subject otherwise addressed by Roku's public accessibility expert, Dr. Hsieh-Yee, they are in areas that appear to be beyond the expertise of Dr. Russ, Roku's technical expert.

10

Dated: June 13, 2023

/s/ *Gregory T. Chuebon*

Noah M. Leibowitz (*pro hac vice*)
NYSBA: 3034980
Gregory T. Chuebon (*pro hac vice*)
NYSBA: 4589057
**DECHERT LLP**
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3500
(212) 698-3599 (fax)
noah.leibowitz@dechert.com
greg.chuebon@dechert.com

Jeffrey B. Plies
SBOTX: 24027621
**DECHERT LLP**
515 Congress Avenue, Suite 1400
Austin, TX 78701
(512) 394-3000
(512) 394-3001 (fax)
jeff.plies@dechert.com

Derek J. Brader (*pro hac vice*)
PBA:  312513
**DECHERT LLP**
Cira Center
2929 Arch Street
Philadelphia, PA  19104
(215) 994-4000
(214) 994-2222 (fax)
derek.brader@dechert.com

Michael H. Joshi (*pro hac vice*)
SBCA:  302184
**DECHERT LLP**
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA 94306
(650) 813-4800
(650) 813-4848 (fax)
michael.joshi@dechert.com

*Counsel for Plaintiff and Counterclaim Defendant IOENGINE, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Western District of Texas, Waco Division, via the CM/ECF system, which will send a notice of filing to all counsel of record who have consented to service by electronic means.

/s/ *Gregory T. Chuebon*