**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

IOENGINE, LLC,
                    *Plaintiff/Counterclaim Defendant,*


v.


ROKU, INC.,
                    *Defendant/Counterclaim Plaintiff.*

C.A. No. 6:21-cv-01296-ADA-DTG

JURY TRIAL DEMANDED

## <u>PRELIMINARY JURY INSTRUCTIONS</u>

# TABLE OF CONTENTS

I.      PRELIMINARY JURY INSTRUCTIONS ............................................................................... 1

　　1.　　Introduction............................................................................................................ 1

　　2.　　The Nature of the Action and the Parties............................................................. 4

　　3.　　United States Patents........................................................................................... 5

　　4.　　Patent Claims ....................................................................................................... 8

　　5.　　Patent Litigation................................................................................................. 10

　　6.　　Burden of Proof Generally................................................................................. 11

　　7.　　Burden of Proof: Preponderance of the Evidence............................................. 12

　　8.　　Burden of Proof: Clear and Convincing Evidence............................................ 13

　　9.　　Contentions of the Parties ................................................................................. 14

　　10.　Overview of Applicable Law.............................................................................. 16

　　11.　Evidence.............................................................................................................. 19

　　12.　Witnesses and Witness Credibility .................................................................... 21

　　13.　Deposition Testimony......................................................................................... 23

　　14.　Expert Testimony................................................................................................ 24

　　15.　Outline of Trial .................................................................................................. 25

　　16.　Jury Notebooks .................................................................................................. 27

# I.     PRELIMINARY JURY INSTRUCTIONS

## 1.     Introduction

MEMBERS OF THE JURY:

You have now been sworn to try this case. As the judge, I will decide all questions of law and procedure. As the jury, you are the judges of the facts. At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial. Do not allow your note-taking to distract you from listening to the testimony. Your notes are an aid to your memory. If your memory should later be different from your notes, you should rely on your memory. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony and evidence.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. This includes everyone you know: your spouse, children, relatives, friends, coworkers, anyone you deal with during the day. During your jury service, you must not communicate any information about this case by any means, including by conversation or with the tools of technology. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or social media website such as Facebook, LinkedIn, YouTube, SnapChat, WhatsApp, Instagram, TikTok, or Twitter, or the like, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not discuss this case with other jurors until the end of the case when I tell you that it is okay for you to begin to deliberate. It is unfair to discuss the case before then because you will not have all the evidence and you must never become an advocate for one side or the other. The parties,

1

the witnesses, the attorneys, and everyone associated with this case are not permitted to communicate with you. So do not think that they are being impolite if you pass them in the hallway and they don't say anything or acknowledge as you're passing. They are simply following my instructions to not speak with you during the trial. And do not speak with anyone else with regard to the case, especially in or around the courthouse, until I instruct you otherwise.

Do not conduct any independent investigation of this case. You must rely solely on what you see and hear within this courtroom. Do not try to obtain information about the case from any other source. In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, or computer to research any issue that might be related to this case. Do not go online or read any newspaper account of this trial or listen to any newscast about it in any format. In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or myself until after you have been excused as jurors.

There are some issues of law or procedure that the attorneys and I must discuss and that I must decide. These issues are not part of what you need to decide and so they are not properly discussed in your presence. To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing. Now, when I confer with the attorneys at the bench, please do not listen to what we are discussing. If the discussions require more time, I may have you leave the courtroom until the lawyers and I have resolved the issues. I will try to keep these interruptions as few and as brief as possible.

Do not allow the fact that either I do or do not have a discussion with the attorneys influence you in any way about how I might feel about this case. In fact, do not let anything I do or say from

Error! Unknown document property name.

now through the end of the trial give you any indication about how I feel about the case. You are the judges of the facts and my opinion does not matter.

To be clear, it will be your duty to find what the facts are from the evidence as presented at the trial. You and you alone will be the judges of the facts. You will have to apply those facts to the law as I will instruct you at the close of the evidence. You must follow that law whether you agree with it or not.

While you are the judges of the facts, I will decide which rules of law apply to this case. Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way. Also, do not let anything I say or do during the course of the trial influence you. Nothing I say or do is intended to indicate, or should be taken by you as indicating, what your verdict should be.

Finally, keep an open mind during the entire trial. Do not decide the case until you have heard all of the evidence, my instructions, and the closing arguments.

Error! Unknown document property name.

2.        **The Nature of the Action and the Parties**

This, as you heard during jury selection, is a patent case. The patents involved relate to portable devices that communicate with terminals and also with communications networks in response to user interaction with an interactive user interface.

The patents and technology will be explained in much greater detail by the witnesses, and the opening statements and closing arguments that you will hear. For your convenience, the parties have also prepared a Glossary of some of the technical terms to which they may refer during the trial, which will be distributed to you.

The Plaintiff in this case is IOENGINE, LLC which I will refer to as "Plaintiff" or "IOENGINE." IOENGINE is the owner of a number of patents, including the two involved in this case, which are identified as U.S. Patent Nos. 10,447,819 and 10,972,584. Because the patent numbers are lengthy, you may hear me, the lawyers, and witnesses refer to them, respectively, as "the '819 and '584 patents." These patents may also be collectively referred to as "IOENGINE's patents," the "Asserted Patents," the "patents-in-suit," or the "patents-at-issue."

Roku Inc. is the Defendant. You will probably hear them referred to throughout the course of the trial as "Roku."

### 3.      United States Patents

Before I summarize the positions of the parties and the issues involved in the dispute, let me take a moment and explain what a patent is and how it is obtained. You have seen a short video for you on the patent system, so we'll go through it quickly here, but patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO" or "USPTO").

A valid United States patent gives the patent holder the right for 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, an examiner reviews the application to determine whether the claims are patentable (meaning, appropriate for patent protection). In examining a patent application, the examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly

Error! Unknown document property name.

available or that is submitted by the applicant. This information is called "prior art." The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art in this case. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed technology was made or before the application was filed. A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable and, thus, whether it will be "allowed." This writing from the examiner is called an "Office Action." More often than not, the initial Office Action by the Patent Examiner rejects the claims. If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims, and to change the claims or to submit new claims. This process may go back and forth until the examiner is satisfied that the application meets the requirements for a patent and the application issues as a patent, or that the application should be rejected and no patent should issue. The papers generated during these communications between the examiner and the applicant are called the "prosecution history."  You may also hear the "prosecution history" referred to as the "file history" or the "file wrapper."

In the United States, a patentee is allowed to file a later patent application with the PTO based on the same specification as an earlier application but with different claims. When that happens, the original patent application is sometimes called the parent application, and the later applications are sometimes called the children applications. These applications and the patents that issue from them are said to be in the same patent family.  In this case, the '819 and '584 patents

are part of an IOENGINE patent family stemming from a parent application filed March 23, 2004.I mentioned earlier that the patents-in-suit are continuation applications. In the United States patent system, after you file your original application, the law allows you to file later patent applications based on the same specification as the earlier application but with different claims, as long as the claims in the later application have support from the specification of the original application. In these circumstances, the original patent application is sometimes called the "parent" application and the later applications are sometimes called the "child" applications. One type of child application is what is known as a continuation application. This is important in this case, because the patents-in-suit were both filed as continuation applications.

A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

Error! Unknown document property name.

4.        **Patent Claims**

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provides context for the claims, but it is the claims that define the breadth of the patent's coverage. Each of the claims must be considered individually, and the coverage of a patent is assessed claim-by-claim.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations."  When a thing (such as a product) meets every one of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. I have determined the meaning of certain words in the claims and I will provide to you my definitions. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and invalidity.

Error! Unknown document property name.

The beginning portion of a claim, also known as the preamble, often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements. For example, a claim to "a table comprising a tabletop, legs, and glue" would cover a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

For any words in the claim for which I have not provided you with a definition, you should apply the plain and ordinary meaning of those terms in the field of the patents at the time the patent application was filed.

Error! Unknown document property name.

**5.      Patent Litigation**

Someone is said to be infringing a claim of a patent when they, without permission from the patent owner, make, use, import, offer to sell, or sell the claimed invention, as defined by the claims, within the United States before the term of the patent expires. A patent owner who believes someone is infringing the rights of a patent may bring a lawsuit, like this one, to attempt to stop the alleged infringing acts or to recover damages, which generally means money paid by the infringer to the patent owner to compensate for the harm caused by the infringement. The patent owner must prove infringement of the claims of the patent. The patent owner must also prove the amount of damages the patent owner is entitled to receive from the infringer as compensation for the infringing acts.

A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid. A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

I will discuss more of the topic of burdens of proof now.

Error! Unknown document property name.

**6.      Burden of Proof Generally**

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on IOENGINE for some issues and on Roku for other issues.

There are two burdens of proof that you will apply in this case. One is preponderance of the evidence, and the other is clear and convincing evidence.

Error! Unknown document property name.

### 7.      Burden of Proof: Preponderance of the Evidence

IOENGINE has the burden of proving infringement and damages by a preponderance of the evidence.

To establish by a preponderance of the evidence means to prove something is more likely so than not. In other words, evidence that persuades you that a claim is more likely true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony. You may think of this preponderance of the evidence standard as greater than 50%.  Roku does not have any burden of proof on the issues of patent infringement or damages.

Error! Unknown document property name.

8.      **Burden of Proof: Clear and Convincing Evidence**

Because patents are presumed to be valid, Roku has the burden of proving patent invalidity be clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the truth of the matter sought to be established. It is evidence so clear, direct, and convincing as to enable you to come to a clear conviction without hesitancy.

This is different from the criminal law standard of "beyond a reasonable doubt." On a scale of the various standards of proof, as you move from the preponderance of the evidence, where the proof need only be sufficient to tip the scales in favor of the party proving the fact, to at the other end beyond a reasonable doubt, where the fact must be proven to near certainty, you may think of the "clear and convincing" standard as being between these two standards, higher than that required for infringement, but less than that required for criminal guilt.

IOENGINE does not have any burden of proof on the issue of invalidity.

9.      **Contentions of the Parties**

IOENGINE's contentions of infringement fall into three main buckets. First, IOENGINE contends that Roku itself makes, uses, imports, offers to sell, or sells a number of products that infringe the Asserted Claims. This contention can be referred to as direct infringement by Roku. Second, IOENGINE contends that Roku and its customers jointly infringe certain Asserted Claims. Joint infringement is another form of direct infringement. Third, IOENGINE contends that Roku induces or contributes to its customers' infringement of the Asserted Claims. This contention can be referred to as indirect infringement by Roku. IOENGINE must prove that Roku directly, jointly, or indirectly infringes one or more claims of the '819 or '584 Patents by a preponderance of the evidence.

The patent claims that IOENGINE contends Roku infringed are:

- Claims 187 and 192 of the '819 Patent; and

- Claims 10, 11, 18, 20, 26, 27, 29, 48, 60, and 61 of the '584 Patent

These claims may be collectively referred to as the "Asserted Claims." The products IOENGINE accuses of infringing the Asserted Patents include certain Roku streaming media players that plug in to a television and stream audio and video from a network.

IOENGINE contends that Roku directly, jointly, and indirectly infringes the Asserted Claims of the Asserted Patents both literally and under the doctrine of equivalents, which I will explain to you further.  You must determine infringement with respect to each Asserted Claim individually.

Roku denies that it has infringed the Asserted Claims and denies that it jointly infringes with its customers or contributes to or induces infringement of others. Roku also argues that the Asserted Claims are invalid.  I will instruct you later as to the ways in which a patent claim may

Error! Unknown document property name.

be invalid.  You must determine invalidity with respect to each Asserted Claim individually. IOENGINE denies that the Asserted Claims are invalid.

Your job will be to decide whether Roku has infringed one or more Asserted Claims and whether any of the Asserted Claims are invalid. If you decide that any claim of the '819 or '584 Patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to IOENGINE to compensate for that infringement.  You will also need to make a finding as to whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damages award you give.  I will take willfulness into account later.

Error! Unknown document property name.

### 10.    Overview of Applicable Law

In deciding the issues I discussed so far, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them again in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Roku has infringed any of the Asserted Claims of the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim, but not infringement as to another. There are a few different ways that a patent claim may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case.  To prove any type of infringement, IOENGINE must do so by a preponderance of the evidence.

In general, however, to prove direct infringement, IOENGINE must prove that Roku made, used, imported, sold, or offered for sale in the United States, a product meeting all the requirements of an Asserted Claim. A patent claim is literally infringed by a Roku product only if the accused Roku product includes each and every element in that patent claim. For direct infringement of method claims, IOENGINE must prove that Roku itself used a method meeting all the requirements of an Asserted Claim or that Roku jointly infringes with its customers by directing or controlling its customers performance of the claimed method steps.

A patent claim can also be infringed under the Doctrine of Equivalents if there's an equivalent component in Roku's product or an equivalent step in the method of using that product for each element of the Asserted Claims that is not literally present.  You may find infringement under the Doctrine of Equivalents if the component or step performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element of the Asserted Claim.

Error! Unknown document property name.

Roku may also indirectly infringe one or more claims of the '819 and '584 Patents by contributing to infringement by another entity or by inducing another person or entity to infringe. I will provide you with more detailed instructions on the requirements for each type of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether any of the Asserted Claims of the '819 and '584 Patents are invalid. Invalidity is assessed on a claim-by-claim basis and Roku must prove invalidity by clear-and-convincing evidence. A patent claim may be invalid for a number of reasons. One way is if Roku proves by clear and convincing evidence that the patent does not meet the "written description" requirement. In order to meet this requirement, the description of the invention in the specification portion of the patent must be detailed enough to demonstrate that the applicant, at the filing of the patent application, actually possessed the invention as broadly claimed in the claims of the Asserted Patents.  When determining whether Roku has met its burden, the claim must be viewed as a whole, and the exact words found in the claim need not be used.

Another way a claim may be proven invalid is if Roku proves by clear and convincing evidence that an Asserted Claim is not "enabled." To meet this requirement, Roku must prove that the description in the patent is not sufficiently full and clear to have allowed persons of ordinary skill in the field of technology of the patent to make and use the invention without undue experimentation, at the time the patent application was originally filed.

Another way that a claim may be invalid is if Roku proves by clear and convincing evidence that it was obvious. A claim is obvious only when all the elements of the claim are present in one or more pieces of "prior art" and it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time to combine the prior art to result in the claimed invention. You will need to consider a number of questions in deciding whether any claims

17

of the Asserted Patents are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

If you decide that any of the Asserted Claims has been infringed and is not invalid, you will then need to decide any money damages to be awarded to IOENGINE to compensate for the infringement. A damages award should put IOENGINE in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what IOENGINE would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate IOENGINE and not to punish Roku. You may not include in your award any additional amount as a fine or penalty in order to punish Roku. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

Error! Unknown document property name.

**11.     Evidence**

The evidence you are to consider consists of the testimony of the witnesses here at trial or at a deposition that will be presented to you, the documents and other exhibits that I will admit into evidence, and any facts the parties agreed or stipulated to. You are to apply any fair inferences and reasonable conclusions you draw from the facts and circumstances that you believe have been proven. Nothing else is evidence.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence.

Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence. It simply requires that you determine the facts from all of the evidence that you hear in this case, whether direct, circumstantial, or any combination.

In judging the facts, you must consider all the evidence, both direct and circumstantial. That does not mean you have to believe all of the evidence. It is entirely up to you to give the evidence you receive in this case whatever weight you individually believe it deserves. It will be up to you to decide which witnesses to believe, which witnesses not to believe, the weight you give any testimony you hear, and how much of any witness's testimony you choose to accept or reject.

The fact that IOENGINE filed a lawsuit is not evidence that it is entitled to a judgment. Likewise, the fact that Roku has raised arguments against the patents-in-suit is not evidence that Roku is entitled to a judgment.

The statements, arguments, and questions by the attorneys are not evidence.

Objections to questions are not evidence. The attorneys that are seated in front of you may object if they believe that documents or testimony that is attempted to be offered into evidence are

Error! Unknown document property name.

improper under the rules of evidence. My legal rulings are not evidence. My comments and questions are not evidence. The notes taken by any juror are not evidence.

You should never be influenced by my ruling on any objection. If I sustain an objection, then just pretend the question was never asked.  If there was an answer given, ignore it. If I overrule the objection, act like the objection was never made. If I give you instructions that some item of evidence is received for a limited purpose, you must follow my instruction. If I give any limiting instruction during trial, I will clarify for you at the time what I mean.

During the trial you may be shown charts, objects, and animations that will help to illustrate the testimony of witnesses. These are called demonstrative exhibits. They are not evidence unless I specifically admit them into evidence. They are just aids to assist you to understand the evidence.

Anything you have heard outside of this courtroom, for example, anything you might know about IOENGINE or Roku that you brought in here with you, needs to be ignored. You must not conduct any independent research or investigation. You must make your decision based only on the evidence presented here in the courtroom and nothing else.

Error! Unknown document property name.

## 12.      Witnesses and Witness Credibility

You alone determine the questions of credibility or truthfulness of the witnesses.

In weighing the testimony of witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings about or interest in the case, any prejudice or bias about the case, and the consistency or inconsistency of the witness's testimony considered in light of the circumstances.

Has the witness been contradicted by other credible evidence? Has the witness made statements at other times that are contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in the outcome, you may accept the testimony if you believe it.

You are not to decide this case by counting the number of witnesses who will testify for the opposing sides. Witness testimony is weighed. Witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testify to the contrary, if after you have considered all of the other evidence you choose to believe the single witness.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness makes a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. This instruction applies to the testimony of all witnesses.

Error! Unknown document property name.

The parties will present witness testimony by having the witness here live for you. They also will also present testimony by reading from a deposition transcript, or by playing excerpts from a video deposition. Both forms are acceptable.

Error! Unknown document property name.

### 13.     Deposition Testimony

Certain testimony may be presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, or if the witness was giving testimony on behalf of its company, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers may be shown to you on a transcript or by video or read into the record by the attorneys.

Deposition testimony is entitled to the same consideration and is to be weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

Error! Unknown document property name.

14.     **Expert Testimony**

You are going to hear from what are known as expert witnesses. Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

You will get to weigh the expert's testimony just like you will consider any witness's testimony. In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness.

Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are not required to accept the opinion of any expert, rather, you are free to accept or reject the testimony of experts, just as with any other witness.

Error! Unknown document property name.

### 15.     Outline of Trial

The trial will begin shortly. First, each side may make an opening statement. An opening statement is not evidence.  It is simply an opportunity for the lawyers to explain what they expect the evidence will show. It will be up to you to determine whether the evidence, that is the testimony of the witnesses and any documents that are admitted, support what the attorneys tell you in their opening statements.

After the opening statements, IOENGINE will present its evidence in support of its contention that the Asserted Claims of the Asserted Patents have been infringed by Roku directly and indirectly. To prove infringement of any claim, IOENGINE must persuade you by a preponderance of the evidence that Roku has infringed that claim. IOENGINE also will argue that Roku's infringement has been willful, which IOENGINE must prove by a preponderance of the evidence.

Roku will then put on its case, if it chooses to, to present evidence that the Asserted Claims of the Asserted Patents are not infringed or infringed willfully by responding to IOENGINE's evidence of alleged infringement and willfulness. I say "if it chooses to," because it is IOENGINE who has the burden of proof in this case for infringement and willfulness.

Roku may also then present evidence that the Asserted Claims of the Asserted Patents are invalid. To prove invalidity of any claim, Roku must persuade you by clear and convincing evidence that the claim is invalid.

IOENGINE may then put on additional evidence, if it chooses to, responding to Roku's evidence that the Asserted Claims of the Asserted Patents are invalid. This is referred to as "rebuttal" evidence. IOENGINE's rebuttal evidence may respond to any evidence offered by Roku.

Error! Unknown document property name.

I say "if it chooses to" with respect to responding to Roku's claim of invalidity, because it is Roku who has the burden of proof for invalidity in this case.

Both parties may also choose to present evidence on damages or the amount of money, if any, IOENGINE is owed if any of the Asserted Claims of the Asserted Patents are found by you to be infringed and not invalid.

After the parties have finished offering evidence, I will give you final instructions on the law that applies to the case. After final instructions, the attorneys will make closing arguments, which are again not evidence. Remember, just like the opening statements, the closing arguments are just an outline and summary of what the evidence that you heard was.

After the closing arguments, I will release you and you will begin your deliberations.

Error! Unknown document property name.

**16.     Jury Notebooks**

I will now instruct the court security officer to pass out your juror notebooks. I ask that you write your name on your notebook. It is important that we not get them confused. As you leave to take a break or at the end of the day, please leave your notebook on the table in the jury room. I ask you to do that because I do not want anyone losing their notebook. Your juror notebook should either be with you at all times in the courtroom or on the table in the jury room and not anywhere else.

Your juror notebook is to assist in your deliberation.

Inside, you will find:

- Paper on which to take notes;
- Copy of the Asserted Patents;
- Glossary of patent terms;
- Claim Constructions; and
- Pictures of witnesses on pages with space for notes.

These materials have been jointly submitted by the parties. Please refer to these materials to assist you during trial.

27

## <u>GLOSSARY OF PATENT TERMS</u>

| | |
|---|---|
| Applicant or Applicants | The named inventor or inventors who are applying for the patent. |
| Claims | The part of a patent that defines the invention. These are found at the end of the patent specification in the form of numbered paragraphs. |
| File Wrapper, File History, or Prosecution History | The written record of proceedings in the United States Patent and Trademark Office ("Patent Office" or "PTO"), including the original patent application and later rejections, responses to the rejections and other communications between the Patent Office and the applicant. |
| Patent Application | The initial papers filed in the Patent Office by an applicant. These typically include a specification, drawings, claims, and the oath (Declaration) of the applicant. |
| Patent Examiners | Personnel employed by the United States Patent and Trademark Office having expertise in various technical areas who review (examine) patent applications. |
| Prior Art | Any information that is used to describe public, technical knowledge prior to the invention by the applicant. |
| Prior Art References | Any item of prior art (publication, patent or product) used to determine patentability. |
| Specification | The part of the patent application or patent that describes the invention, and may include drawings. The specification does not define the invention, only the claims do. |

Error! Unknown document property name.